**Petition for Writ of Mandamus Conditionally Granted, in Part, and Denied, in Part, and Memorandum Opinion filed February 6, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00979-CV

---

## IN RE RH WHITE OAK, LLC, BRIAN HARDY, COLIN ZAK, ENTEX PARTNERS, LTD., AND ENTEX MANAGEMENT SERVICES, L.L.C., Relators

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**125th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2010-81470**

---

## MEMORANDUM OPINION

On October 31, 2013, relators RH White Oak, LLC, Brian Hardy, Colin Zak, Entex Partners, Ltd., and Entex Management Services, L.L.C. filed a petition for writ of mandamus in this Court. *See* Tex. Gov't Code Ann. § 22.221; *see also* Tex. R. App. P. 52. In the petition, relators ask this Court to compel the Honorable Kyle Carter, presiding judge of the 125th District Court of Harris County, to set

aside his October 25, 2013 sanctions order. We conditionally grant the petition, in part, and deny it, in part.

## BACKGROUND

On September 30, 2008, relators executed a note and other related documents for a construction loan from real party in interest Lone Star Bank. On October 6, 2008, a letter, purportedly signed by Colin Zak and Brian Hardy, was presented to a Lone Star loan officer, real party in interest Rick Hajdik, authorizing J.R. Reuther of Reuther Homes, LLC to make draws on behalf RH White Oak. The October 6, 2008 letter states:

> Please accept this letter as my authorization to allow JR Reuther of Reuther Homes to make draw requests on behalf of RH White Oak, LLC for the construction/development of the aforementioned project. This shall pertain to both construction and soft cost draw requests.
>
> It is my understanding that draws are paid per the Bank mandated Draw Schedule upon completion of each construction phase.
>
> I also authorize for all draws approved by the bank inspector to be funded into the bank account of Reuther Homes.
>
> I further understand that Lone Star Bank will require lien waivers/affidavits of bill paid once each draw has been funded.

Relators defaulted on the note, and a non-judicial foreclosure sale was held on January 4, 2011. Lone Star sued relators for the remaining balance of the note, interest, and attorney's fees.

Relators filed counterclaims against Lone Star for fraud in a real estate transaction, common law fraud, DTPA violations, breach of contract, constructive trust, equitable lien, declaratory judgment, and attorney's fees. Relators alleged

Reuther's withdrawals were unauthorized because Zak's and Hardy's signatures on the October 6, 2008 letter presented to Lone Star had been forged. Relators also filed a third-party petition against Rick Hajdik, alleging claims for fraud in a real estate transaction, common law fraud, breach of fiduciary duty, conspiracy, and attorney's fees.

On September 17, 2013, Lone Star and Hajdik filed motions for sanctions under Rule 215 of the Texas Rules of Civil Procedure against relators. *See* Tex. R. Civ. P. 215. Lone Star and Hajdik alleged that relators had an identical original of the October 6, 2008 letter, with Zak's and Hardy's genuine signatures, in their possession, but had refused to produce it and had denied its existence. According to Lone Star and Hajdik, it was only through Lone Star's trial subpoena to Reuther in August 2013 that the October 6, 2008 letter, with Zak's and Hardy's genuine signatures, was obtained by Lone Star and Hajdik.

On October 7, 2013, the trial court held an evidentiary hearing on the sanctions motions. At the hearing, the trial court stated "I want to, for purposes of the record, take judicial notice of the file in this case including all discovery motions that have been filed and heard by this Court, along with all argument associated therewith." Relators' counsel objected to several of Lone Star's and Hajdik's exhibits on the ground of authentication, including Lone Star Exhibit No. 25 and Hajdik Exhibit No. 13, both of which were copies of Reuther's business records affidavit that attached the October 6, 2008 letter with the genuine signatures. The trial court overruled relators' objections and admitted all of Lone Star's and Hajdik's exhibits for purposes of the hearing.

3

The evidence produced by Lone Star and Hajdik also included a series of emails dated October 6, 2008 between Reuther and Zak regarding the October 6, 2008 letter. Reuther emailed Zak, stating, "Please sign the attached document [October 6, 2008 letter] for White Oak." In the subsequent email regarding the wire transfer form, Reuther asked Zak: "Can you sign this to[o]? Just send back signature pages for both and I will fill in the rest." The next email from Reuther states, with regard to the October 6, 2008 letter, "Please sign this one — the bank wants two signatures from you — and as Manager of RH White Oak. The banks are all freaking and making life difficult . . . . Sorry . . . this stuff has never been required before!" The next email was from Zak to Reuther, stating, "Signed Docs attached. . . [.]" The documents attached to Zak's email were the October 6, 2008 letter and wire transfer forms, which contained relators' genuine signatures.

Also among the documents Lone Star and Hajdik introduced into evidence was a February 14, 2012 report by forensic document examiner, Janet Masson, stating that Zak's and Hardy's signatures on the October 6, 2008 letter presented to Lone Star were forgeries. Masson submitted another report, dated September 9, 2013, in which she opined that the October 6, 2008 letter produced by Reuther contained Zak's and Hardy's genuine signatures.

Lone Star and Hajdik also presented the April 23, 2012 affidavits of Zak and Hardy, which had been submitted in support of relators' response to a motion for summary judgment. Both Zak and Hardy attested that their respective signatures on the October 6, 2008 letter were forged. Neither Zak nor Hardy mentioned the letter that contained their genuine signatures.

Lone Star and Hajdik also presented excerpts of Zak's and Hardy's depositions. Hardy stated at his February 10, 2012 deposition that he did not recall signing the October 6, 2008 letter. When asked at his July 29, 2013 deposition whether he had ever affixed his genuine signature to the October 6, 2008 letter, Hardy responded, "[n]ot that I'm aware of." Hardy admitted that if he had actually signed the October 6, 2008 letter, "It would be a game changer," but he did not remember Zak asking him to sign the October 6, 2008 letter.

Zak stated in his July 23, 2013 deposition that he did not recall if Reuther had asked him to give Reuther authority to make draws on the Lone Star note and deposit them directly into Reuther's account. Zak also testified that he "may have," but he did not know if he had ever communicated directly with Reuther about drafting a letter of authority to Lone Star, giving Reuther the authority to take funds from the Lone Star note directly into Reuther's account. But Zak also denied drafting a letter giving Reuther authority to take advances on loans from the Lone Star note and putting them directly into accounts controlled by Reuther. When asked if there was an October 6, 2008 letter with his and Hardy's genuine signatures among his emails to Reuther, Zak stated, "I don't recall. If it's there, it would have been produced and sent to our attorney. . . . I have no idea whether there's another document that I signed or Brian signed at some other point in time." Zak did not recall Reuther's having a copy of the October 6, 2008 letter with his and Hardy's genuine signatures or if there was a set of wire transfer forms for Lone Star with his genuine signature.

5

The attorneys for Lone Star and Hajdik testified as to attorney's fees incurred because of relators' alleged discovery abuse, but did not put on any further evidence at the hearing.

The only evidence offered by relators was Zak's testimony. Zak testified that he had made a diligent search of his records to find documents responsive to the production requests, including emails between him and Reuther, he did not withhold any documents, and he had given all responsive documents to his attorney. Zak stated that he did not recall seeing the letter with the genuine signatures, and if it had been in his possession, he would have sent it to his attorney. Zak testified that the letter and wire transfer forms presented to the bank did not contain his signature. Zak claimed that he did not have any discussions with Reuther about authorizing Reuther to sign his name to anything, and Zak would not have allowed Reuther to sign his name to anything. Zak stated he was not recanting any part of his deposition or affidavit testimony.

At the end of the hearing, the trial court announced that it was granting the motions for sanctions. Specifically, the trial court made "evidentiary conclusions and findings" establishing facts on which relators would not be allowed to introduce any contrary evidence. Also, relators would not be permitted to conduct further discovery, file further pleadings, or introduce evidence of their counterclaims. The trial court further sanctioned relators $750,000 to be paid in thirty days, as well as attorney's fees of $185,756.44 to Hajdik's counsel and $275,000 to Lone Star's counsel (the attorney's fees incurred up to that date) to be paid within thirty days.

On October 23, 2013, the trial court held a telephone conference hearing because Lone Star had filed a motion to refer the case to mediation before the November 4, 2013 trial date. Relators objected to mediation because the trial court had already announced on the record that relators were liable for $1.2 million— three times the amount of damages Lone Star was seeking at trial. Relators did not "really even know what's left to be tried," because the proposed order included "death penalty sanctions" as to relators' claims and defenses. The court did not alter the amount of attorney's fees previously awarded, but sua sponte modified the amount of sanctions awarded to Lone Star to $95,744, or one-half of the unpaid principal amount of the loan of $191,488. The court also awarded sanctions in favor of Hajdik in the amount of $25,000.[1]

On October 25, 2013, the trial court signed a twenty-three-page sanctions order. The trial court made a number of detailed findings—all essentially finding that relators had the October 6, 2008 letter with genuine signatures in their possession, which they deliberately failed to produce. The court also confirmed its previous awards of sanctions and attorney's fees to Lone Star and Hajdik. The trial court ordered that relators could not conduct further discovery or file further pleadings. Furthermore, the court ordered a number of facts established, and relators could not introduce evidence to the contrary. The order specifically stated it was not imposing death penalty sanctions. This mandamus proceeding followed.

In their petition for writ of mandamus filed in this court, relators assert that Lone Star and Hajdik did not meet their burden at the sanctions hearing by proving

---

[1] The trial court also announced it was granting real parties' motion to mediate the case. That ruling has not been challenged on mandamus.

that, among other things, the October 6, 2008 letter had relators' genuine signatures or that relators had the letter in their possession. Relators further complain that the trial court's order imposes death penalty sanctions without having tested lesser sanctions with a prior order. Finally, relators maintain that they do not have an adequate remedy by appeal because the death penalty sanctions are imposed in a pre-trial interlocutory order.

## MANDAMUS STANDARD OF REVIEW

To be entitled to mandamus relief, a relator must demonstrate (1) the trial court clearly abused its discretion; and (2) the relator has no adequate remedy by appeal. *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam).

The adequacy of an appellate remedy must be determined by balancing the benefits of mandamus review against the detriments. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding). Because this balance depends heavily on circumstances, it must be guided by analysis of principles rather than simple rules that treat cases as categories. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding). In evaluating benefits and detriments, we consider whether mandamus will preserve important substantive and procedural rights from impairment or loss. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding). We also consider whether

8

mandamus will "allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments." *Id.* Finally, we consider whether mandamus will spare the litigants and the public "the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *Id.*

## ANALYSIS

### I.      Sanctionable Conduct

Relators contend that Lone Star and Hajdik did not meet their burden to prove any sanctionable conduct, and therefore the trial court's order is based entirely on assumptions that relators abused the discovery process. "'[W]hen a motion for sanctions asserts that a respondent to a discovery request has failed to produce a document within its possession, custody or control, the movant has the burden to prove the assertion.'" *Global Servs., Inc., v. Bianchi*, 901 S.W.2d 934, 937 (Tex. 1995) (orig. proceeding) (quoting *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 732 (Tex. 1993) (orig. proceeding)). Because direct evidence is rarely available, it may be necessary for the movant rely entirely on circumstantial evidence. *See id.* at 938 ("We recognize that it is often difficult to prove that a party has withheld documents from discovery. Direct evidence of such conduct is seldom available, and it may be necessary to rely entirely upon circumstantial evidence."). The court's imposition of sanctions cannot be based merely on a party's bald assertions, however. *Id.* Instead, "[t]here must be some evidence of discovery abuse before sanctions can be imposed." *Id.*

Relators complain that the trial court overruled their objections to the admission of the letter attached to Reuther's affidavit because Reuther did not

testify live and the affidavit did not satisfy the requirements to prove up authenticity or chain of custody. Reuther's business records affidavit was filed and served on September 18, 2013, more than fourteen days prior to the October 7, 2013 hearing. *See* Tex. R. Evid. 902(10)(a). A review of Reuther's business records affidavit reflects that it is sufficient to satisfy Texas Rule of Evidence 902(10)(b), and such attached documents meet the exception to the hearsay rule found in Rule 803(6). *See* Tex. R. Evid. 803(6), 902(10)(b).

Moreover, relators did not object in the trial court to Reuther's failure to testify live at the October 7 hearing. Consequently, relators have waived such argument in this mandamus proceeding. *See In re Advance Payroll Funding, Ltd.*, 254 S.W.3d 710, 714 (Tex. App.—Dallas 2008, orig. proceeding) (holding that arguments are waived in original proceedings if they are not raised in the trial court). Therefore, we conclude the trial court did not clearly abuse its discretion by admitting into evidence the letter, wire transfer forms, and related emails between relators and Reuther .

Relators further complain that Lone Star and Hajdik failed to (1) prove that Reuther did not alter the letter; (2) produce the trial subpoena, which not only violated the docket control order by conducting discovery after the deadline, but also violated Tex. R. Civ. P. 176.3(b), prohibiting the use of trial subpoenas to avoid service requirements under Tex. R. Civ. P. 191.5; (3) explain why the trial subpoena was issued when trial was more than two and one-half months away; (4) prove relators had possession, custody, or control of the letter at any time after October 6, 2008; (5) prove that relators had deleted the letter or any email purporting to forward the same to Reuther; (6) prove that relators were aware of or

recalled that they had signed a letter on October 6, 2008, or had authorized Reuther to request such draws or receive funds from the bank; (7) prove that relators had lost, misplaced, deleted, or destroyed the letter, including any original, copy, or electronic copy; or (8) prove that relators did not diligently search for the letter, including any original, copy, or electronic copy.

The evidence at the October 7, 2013 hearing showed there was a version of the October 6, 2008 letter with Zak's and Hardy's genuine signatures, as determined by a forensic document expert, and such letter was not produced until Reuther did so pursuant to a trial subpoena. An email sent from Zak's email account showed that he was sending the signed letter to Reuther. Zak and Hardy had not referenced or mentioned the letter with their real signatures in prior affidavits and deposition testimony, and moreover they claimed that they were not aware of any October 6, 2008 letter with their genuine signatures. Zak testified at the hearing that he did not recall seeing the letter with his and Hardy's real signatures, but if it had been in his possession, he would have given it to his attorney.

There is circumstantial evidence showing that relators had actually signed a copy of the October 6, 2008 letter but later denied its existence and failed to produce it, which is sufficient to support a finding of sanctionable conduct. *See Bianchi*, 901 S.W.2d at 938. Moreover, to the extent there are fact issues, we may not decide those in a mandamus proceeding. *In re Angelini*, 186 S.W.3d 558, 560 (Tex. 2006) (orig. proceeding).

## II. Death Penalty Sanctions

Relators also assert that the trial court abused its discretion by imposing death penalty sanctions for this conduct despite the lack of any order compelling production of the October 8, 2006 letter and without considering lesser sanctions. Lone Star and Hajdik, on the other hand, assert that the trial court's order does not impose "death penalty" sanctions. Therefore, we will next address whether the trial court imposed death penalty sanctions.

Discovery sanctions can be used to adjudicate the merits of a party's claims when a party's hindrance of the discovery process justifies a presumption that its claims lack merit. *Cire v. Cummings*, 134 S.W.3d 835, 841 (Tex. 2004). A death penalty sanction adjudicates a claim and precludes presentation of the merits of the case. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991) (orig. proceeding). Although death penalty sanctions are most often thought of in the context of striking pleadings or rendering a default judgment, any sanctions that are case determinative may constitute death penalty sanctions, including those that exclude essential evidence. *GTE Commc'ns Sys. Corp.*, 856 S.W.2d at 732; *see also Braden v. Downey*, 811 S.W.2d 922, 929 (Tex. 1991) (orig. proceeding).

Relators contend the trial court imposed death penalty sanctions because they cannot introduce evidence on any of their claims or defenses against real parties, except the defense of mitigation. Instead, relators maintain they "will be left with nothing to do but sit and watch during the . . . trial."

Lone Star and Hajdik counter that the trial court did not impose death penalty sanctions because they are not case determinative. Instead, the trial court

12

properly determined that relators' claims related to the question of authorization lacked merit, but the affirmative defenses regarding the construction loan agreement and equity in the land remain at issue.

The trial court's sanctions order states that certain facts shall be taken to be established, and relators may not put on any evidence to the contrary. These facts include not only that Reuther had authority to take draws from the RH White Oak loan, but also that Lone Star and Hajdik did not commit fraud, owe or breach any fiduciary duties, commit any criminal offenses, or violate the DTPA. Moreover, the order states that relators shall not introduce evidence supporting various affirmative defenses. We conclude that the order imposes death penalty sanctions because it adjudicates many of relators' claims and defenses and precludes presentation of the merits of their case. *See TransAmerican Natural Gas Corp.*, 811 S.W.2d at 918. We therefore review the order under the standards applicable to death penalty sanctions.

## III.    Nexus Between Conduct and Sanctions

Relators contend the trial court could have imposed lesser sanctions bearing some nexus between the alleged conduct and the sanctions. A trial court may not impose sanctions that are more severe than necessary to satisfy legitimate purposes. *Cire*, 134 S.W.3d at 839. Any sanction must be "just"; that is: (1) a direct relationship must exist between the offensive conduct and sanction imposed; and (2) a sanction must not be excessive. *TransAmerican Natural Gas Corp.*, 811 S.W.2d at 917.

Under the first prong, a direct relationship exists if a trial court directs the sanction against the abuse found and it remedies the prejudice caused to the

13

innocent party. *Id.* This means that the trial court must also at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both. *Id.*[2]

Under the second prong, sanctions must not be excessive, and the trial court must have considered whether lesser sanctions were available that would have fully promoted compliance. *Id.* Generally, before a sanction that prevents a decision on the merits is justified, lesser sanctions must first be tested to determine their efficacy. *Cire*, 134 S.W.3d at 840. In all but the most exceptional cases, the trial court must actually test the lesser sanctions before striking pleadings. *Id.* at 842. In all cases, the record must reflect that the trial court considered the availability of appropriate lesser sanctions and must contain an explanation of the appropriateness of the sanction imposed. *Id.* The trial court need not test the effectiveness of each available lesser sanction by actually imposing the lesser sanction on the party before issuing the death penalty sanction; rather, the trial court must analyze the available sanction and offer a reasoned explanation as to the appropriateness of the sanction imposed. *Id.* at 840.[3]

---

[2] The sanctions order states with regard to the nexus between the conduct and the sanctions:

> Defendants' conduct justifies imposition of evidentiary sanctions to cure this misconduct, as such sanctions bear a direct relationship to Defendants' abuse and misconduct in this lawsuit. It would be unfair to permit Defendants to continue to pursue these claims against Lone Star Bank and Hajdik. There is a direct nexus between Defendants' lies regarding (1) production of documents, (2) existence of documents, (3) signing of documents, and (4) circumstances surrounding the signing of documents and the evidentiary sanctions imposed because each evidentiary sanctions [sic] addresses Defendants' claims arising from Defendants' assertions that Reuther had no authority to make draws and "forgery."

[3] The sanctions order states with regard to the imposition of lesser sanctions:

14

Lone Star and Hajdik assert that relators' sanctionable conduct justifying the evidentiary sanctions includes: (1) untruthful responses to requests for production; (2) untruthful answers to interrogatories; (3) untruthful responses to requests for admissions; (4) untruthful statements in summary judgment affidavits; (5) untruthful responses to requests for disclosures; (6) untruthful statements in Zak's February 8, 2012 and July 23, 2103 depositions; (7) untruthful statements in Hardy's February 10, 2012 and July 29, 2013 depositions; (8) concealment of evidence instead of compliance with proper discovery requests; (9) failure to produce evidence which goes to the heart of the case; and (10) misrepresentations of facts disproving relators' claims, defenses, and causes of action.

We do not question the seriousness of the sanctionable conduct found by the trial court. Nevertheless, as noted above, there must be a direct relationship between the offensive conduct and the sanctions imposed. We hold this relationship is lacking between relators' conduct in failing to produce the October 6, 2008 letter with their genuine signatures and the trial court's evidentiary sanctions foreclosing relators' claims and defenses. For example, relators' claims against Lone Star and Hajdik also involved allegations that Lone Star and Hajdik were supposed to have confirmed that the draw requests were legitimate and

The Court has considered imposition of lesser sanctions and all other sanctions available. The Court finds that less stringent sanctions are not required because less stringent sanctions would be ineffective and inappropriate given the egregiousness of Defendant's discovery abuse. . . . But for Defendants' misconduct and delay resulting therefrom, this is a simple case, unnecessarily complicated by Defendants' discovery abuse. No lesser sanctions can cure Defendants' wrongdoing. These sanctions are not excessive when compared with other sanctions available to the Court under Rule 215, such as death penalty sanctions or striking Defendants' pleadings, which are not being imposed.

related to the subject project, and Lone Star and Hajdik fraudulently induced relators into executing the extension of the note. Thus, the evidentiary sanctions go beyond merely foreclosing the claim that draws by Reuther were not valid due to the forged October 6, 2008 letter. Because the evidentiary sanctions in their current form fail the direct relationship test, the trial court clearly abused its discretion by imposing them, and we need not address whether the trial court should also have tested the availability of lesser sanctions.[4]

When a court imposes death penalty sanctions that have the effect of adjudicating the dispute, but which do not result in the rendition of an appealable judgment, there is no adequate remedy by appeal. *TransAmerican Natural Gas Corp.*, 811 S.W.2d at 919. Because the trial court abused its discretion by awarding death penalty sanctions in the form of evidentiary sanctions, relators have no adequate remedy by appeal.[5]

---

[4] We also need not address whether certain of the evidentiary sanctions, if imposed standing alone, would satisfy the direct relationship test.

[5] Lone Star and Hajdik contend that relators have not provided a sufficient mandamus record. We reject this argument and conclude relators' record is sufficient for this court to determine that the trial court abused its discretion by imposing death penalty sanctions in the form of evidentiary sanctions against relators. Lone Star and Hajdik further assert relators failed to make the necessary predicate request for relief with a motion for the trial court to reconsider its order before seeking mandamus relief. *See In re Perritt*, 992 S.W.2d 444, 446 (Tex. 1999) (orig. proceeding) (per curiam). Such requirement is excused when the request would have been futile and the trial court's refusal little more than a formality. *Terrazas v. Ramirez*, 829 S.W.2d 712, 723 (Tex. 1991) (orig. proceeding). After reviewing the petition and the mandamus record, it is not evident that a request to reconsider would have added anything new for the trial court's consideration. *See In re Brown*, 277 S.W.3d 474, 483 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding) (plurality op.) ("To determine whether a request would have been futile, appellate courts examine whether the request would have added anything for the court's consideration.").

## IV. Monetary Sanctions

The trial court also assessed monetary sanctions against relators. Ordinarily, a relator has an adequate remedy by appeal from an order awarding monetary sanctions. *Braden*, 811 S.W.2d at 928. When a monetary sanction is so severe as to threaten a party's continuation of litigation, an appeal is an adequate remedy only if payment is deferred until final judgment when the party can supersede the judgment and perfect an appeal. *Prime Group, Inc. v. O'Neill*, 848 S.W.2d 376, 378–79 (Tex. Houston [14th Dist.] 1993, orig. proceeding). During the October 23, 2013 telephone conference with the trial court, relators' counsel stated the following:

> I didn't get a chance to bring this up at the last hearing but what is the time period for us to pay these sanctions? You said 30 days at the last hearing. To the extent that is before we have a final judgment rendered, my clients can't pay the money and continue on with this case. We would like to tie any sanctions award to being payable upon final judgment.

At that point of the conference, the trial court had already announced that it was sua sponte reducing the $750,000 sanction to $95,744, but it had not yet signed the written sanctions order. The court did not rule at the hearing on when the sanctions would be payable, but instead sent the parties to mediation. The written sanctions order states that Lone Star and Hajdik have judgment against relators for the monetary sanctions, but it does not address when the sanctions are to be paid.

In their petition, relators have not shown when the monetary sanctions are payable or explained why the sanctions are so severe as to threaten their ability to continue litigation. Instead, relators merely describe the monetary sanctions.

17

Therefore, relators have not shown they lack an adequate remedy by appeal of the monetary sanctions portion of the order.  *See In re Christus Health*, 276 S.W.3d 708, 709 n.2 (Tex. App.—Houston [1st Dist.] 2008, orig. proceeding [mand. denied]) (holding relators did not contend that they had no adequate remedy by appeal as to monetary sanctions in mandamus petition because they contended only such sanctions were an abuse of discretion).  Relators have not established that they are entitled the mandamus relief regarding the imposition of monetary sanctions.

## CONCLUSION

We conclude that the trial court abused its discretion by imposing death penalty sanctions in the form of evidentiary sanctions against relators, and relators do not have an adequate remedy by appeal.  Accordingly, we conditionally grant the petition for writ of mandamus, in part, and direct the trial court to vacate those portions of its October 7, 2013 order (1) establishing enumerated facts "i" through "xvi" and prohibiting relators from introducing any evidence to the contrary or to inoculate the jury regarding those findings; (2) prohibiting relators from conducting further discovery; (3) prohibiting relators from filing further pleadings; and (4) prohibiting relators from introducing evidence on their causes of action and affirmative defenses listed in "xvii."  The writ will only issue if the trial court does not act in conformity with this opinion.  We deny the remainder of the petition regarding monetary sanctions.  We also lift our stay granted on November 4, 2013.

PER CURIAM

Panel Consists of Justices Busby, Donovan, and Wise.

18