**Opinion issued October 16, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-14-00256-CV**

————————————

## IN RE NOBLE DRILLING (JIM THOMPSON), LLC, Relator

---

**Original Proceeding on Petition for Writ of Mandamus**

---

## O P I N I O N[1]

In this original proceeding, Noble Drilling (Jim Thompson), LLC, seeks mandamus relief from the trial court's March 4, 2014 sanction order striking two of Noble's defenses, and further seeks a reduction of monetary sanctions from $136,498.05 to the amount of $86,000. The sanctions were imposed following

---

[1] The underlying case is *Salvador Maciel v. Noble Drilling (Jim Thompson) LLC, Noble Drilling Services Inc., Noble Drilling Corporation, Noble Drilling Exploration Company, Noble Drilling (U.S.) LLC, Noble Corporation, Shell Exploration & Production Company, and Shell Oil Company*, No. 2011-43366, in the 215th District Court of Harris County, the Honorable Elaine H. Palmer, presiding.

Noble's 15-month delay producing photographs of an accident scene taken the day Salvadore Maciel was injured on a Noble drilling rig. Noble argues that the trial court abused its discretion in striking its defenses and awarding over $50,000 in additional monetary sanctions that were unsupported by timely proof or the need to obtain discovery. We conditionally grant mandamus relief, in part.

## Background

On June 15, 2011, Maciel stepped into a hole in a metal deck grating and was injured while working aboard a Noble drilling rig. This mandamus petition involves a delay in locating and producing two photographs of the accident scene taken the day of Maciel's injury.

**Chronology of events surrounding location of photographs**

On June 15, 2011, Salvadore Maciel was cleaning a deck on an oil rig when his leg slipped into an exposed hole, injuring his shoulders, ankle, and back. At the time, Maciel was employed by CleanBlast, which had been hired to perform maintenance work on the rig. Maciel saw the area in which the hole was located while performing a hazard inspection before working in the area, but denies that he saw the hole itself.

Maciel sued Noble and its related business entities under the Longshore and Harbor Worker's Compensation Act, alleging negligent maintenance of the vessel, failure to warn, and failure to make safe the premises, among other causes. Noble

filed an answer and asserted eleven affirmative defenses, including contributory negligence and that Maciel's claims were precluded "as a result of the open and obvious character of the vessel conditions in question."

During his August 2012 deposition, Maciel testified that photographs were taken of the incident site soon after his alleged injury occurred ("time-of-incident photos").[2] Noble requested Carl Sonnier, a barge engineer, locate the time-of-incident photos. When Sonnier was unable to locate the photos, Noble advised him to take additional photos of the incident site. Sonnier took more photos in September but, at that time, there was a metal plate covering the hole. Sonnier emailed these additional photographs to Rig Manager Gerald Breaux and Drilling Superintendent Grant Goodeaux that same day. He also included with his email the two time-of-incident photos, but later testified he was unaware that those two photos were included in his email.

In early November 2012, a few weeks before his deposition, Sonnier took another set of exemplar photographs, this time without the protective plate covering the incident hole so that the photographs would accurately depict the site's condition at the time of the incident (the "exemplar photographs"). The CleanBlast relief foreman on duty at the time of Maciel's accident subsequently

[2] Maciel served his First Set of Interrogatories, Requests for Production, Requests for Admissions & Requests for Disclosures on March 15, 2012 requesting that the photographs be produced. Shortly after Maciel's deposition, he served Noble with Plaintiff's Second Set of Interrogatories & Requests for Production.

testified that the exemplar photographs "fairly and accurately" depicted the area where Maciel was injured.

During his deposition, Sonnier testified that he no longer possessed the time-of-incident photos, did not know where they were, and did not believe they were still in existence. Noble representatives asked Sonnier to search again for the photos. Sonnier testified that he looked through the on-site digital cameras and emails he believed he had sent in June 2011 containing the time-of-incident photos, but his efforts to locate them were unsuccessful. Sonnier believed that he had emailed the photos to Breaux, so he also searched Breaux's computer, as well as looking through all "our stuff" and all the emails that were on the web base. Breaux also testified that he searched for the photos but was unable to locate them. Because the parties incorrectly believed that the time-of-incident photos were emailed shortly after the incident, Breaux only searched emails from around that time.

In January 2013, Maciel moved to compel discovery, alleging that Noble was uncooperative in responding to discovery requests. John Myers, Maciel's e-discovery consultant who is an "ACE certified computer forensics analyst," suggested that the parties use eMag (an electronic discovery consultant) pursuant to an e-discovery agreement to extract the necessary data. Noble agreed to retain eMag in February in an attempt to locate the missing time-of-incident photos.

When eMag searched Breaux's and Sonnier's hard drives, it did not find any photos of the incident site, photos attached to emails, or emails commenting on a hole in the grating floor. Maciel then filed a second motion to compel arguing that Nobel had not produced the photos.

At a March 2013 hearing on the motion to compel, the trial court ordered Noble to grant Maciel access to Noble's electronic storage devices that may have been used to store the time-of-incident photos. The two parties then entered into a second e-discovery agreement allowing Maciel to inspect relevant backup tapes, cameras, and hard drives to search for the time-of-incident photos. In addition, the e-discovery agreement provided procedures for searching the hard drives belonging to Sonnier, Breaux, and Kerric Peyton (Drilling Superintendent at the time of the incident, who had left his employment with Noble) for specified emails that were transmitted on the day of the accident and the next two days. These three days were apparently chosen because the parties believed that Sonnier emailed the photos near the time of the June incident, although it would later be determined that the photos were not emailed until September.

Maciel's e-discovery consultant, Myers, inspected two digital cameras and memory cards from the rig, six back-up tapes, a laptop computer with access to Noble's active email exchange, and computer data. Myers connected the cameras to a write blocker to ascertain whether the cameras contained any pertinent data on

5

them. He did not find any. Next, he examined the available hard drives. Myers was unable to locate the photos from the mutually agreed date range. The parties agreed that Noble would ask eMag to extract back-up data.

Meanwhile, Sonnier began to doubt that he had taken the photographs immediately after Maciel's alleged accident. Noble concluded that Sonnier was confused because Sonnier was frequently taking photos of the same general area during the summer of 2011 while monitoring progress on the project.

The parties met for a second discovery conference in April 2013. By this date, eMag had performed its work on the back-up tapes using eMag's standard procedures, but still was unable to locate any responsive emails between Sonnier, Breaux, Goodeaux, and Peyton during the agreed-upon dates. Noble offered to allow Myers, Maciel's retained e-discovery consultant, to search the cameras and memory cards again, but Myers declined.

After the April conference, Noble advised Maciel that "the only remaining e-discovery to be completed at this time is (1) remnants searching of the seven hard drives for Carl Sonnier, Gerald Breaux, and Grant Goodeaux, and (2) finalizing the back-up tapes data search."

**First motion for sanctions**

On April 16, 2013, Maciel filed a motion for sanctions based on the missing time-of-incident photos. He asserted that, in response to the court order requiring

Noble to produce computer hardware for e-discovery, Noble had stated that the hard drive of the Drilling Superintendent at the time of the incident, Peyton, "was never searched at all, had never been located, and may never be located." Maciel claimed that Noble's sworn affidavits that the hard drive was searched and photographs were not found were "both erroneous and misleading." Among other things, Maciel also argued that Noble did not diligently search for the time-of-incident photos and that he had been prejudiced by the failure to produce the photos. Maciel requested that the court enter an order striking Noble's pleadings.

Noble argued that Maciel's request for sanctions was premature because the search for the photos was ongoing and that Maciel "is no longer cooperating" with the production. On May 3, Noble filed a motion to require Maciel to complete e-discovery and sought the appointment of a special master pursuant to Texas Rule of Civil Procedure 171. The court denied Noble's and its motion for an evidentiary hearing.

On May 7, 2013, the trial court granted Maciel's motion for sanctions, struck Noble's defenses, and set a hearing on May 20, 2013 to determine an appropriate award of attorney's fees.

**First mandamus**

On May 15, 2013, Noble filed a petition for writ of mandamus arguing that, without a record containing evidence of a party's flagrant bad faith or counsel's

7

callous disregard for discovery, death penalty sanctions cannot stand and do not promote compliance with the rules of discovery.

Meanwhile, Noble continued to search for the photos. Noble hired another e-discovery company, Kroll Ontrak, to extract email data for the day of the accident and the following three.

In June 2013, this court conditionally granted mandamus relief, requiring that the trial court's order striking Noble Drilling, LLC's pleadings be set aside. *See In re Noble Drilling (Jim Thompson) LLC*, No. 01-13-00412-CV, 2013 WL 3146993 (Tex. App.—Houston [1st Dist.] June 18, 2013, orig. proceeding).

That same month, Noble located the photos. After the sanctions order, Noble hired Paul Brown, President and CEO of CyberEvidence, Inc., to continue the search for the two photos. Brown did not find any emails from Sonnier or Breaux to Peyton sending the time-of-incident photos during the agreed-upon days. But Brown did discover the photos on one of the camera memory cards that others had examined on numerous occasions. The next day, Noble produced these photographs to Maciel.[3]

Maciel then requested Brown's deposition. Before his deposition, Brown expanded his search parameters by examining emails over a greater period of time. He then discovered that Sonnier had emailed the time-of-incident photos to

---

[3] Myers explained that he had not seen the photographs on the camera due to his choice of search technology.

Goodeaux around lunchtime on September 26, 2012, not within the three-day search period the parties had been using to attempt to locate the photos. Goodeaux testified that he did not recall what he did upon receiving the email containing the photos.

**Motion for modified sanctions**

After Noble produced the time-of-incident photos, Maciel filed a Motion for Modified Sanctions, alleging that Noble deliberately concealed them. Maciel requested the following sanctions: (1) reimbursement of Maciel's attorney's fees and expenses incurred in connection with obtaining the photos; (2) exclusion of the exemplar photographs of the incident site; and (3) striking of Noble's defenses of "open and obvious" and "contributory negligence." The court heard evidence offered by both parties on the issue and orally granted the motion. On March 4, 2014, the trial court signed a sanctions order (1) requiring Noble to pay $136,498.05 in attorney's fees and expenses as a sanction; (2) excluding Sonnier's "staged photographs" from September/November 2012 because those photos did not depict the deck as it actually was at the time of the incident; and (3) striking Noble's defenses of "open and obvious" and "contributory negligence."

The court found in its order that Noble's failure to produce the time-of-incident photos compromised Maciel's ability to prove that the condition of the deck was unreasonably dangerous.

9

**Discussion**

## A. Standard of review and applicable law

### 1. Mandamus standard

To be entitled to mandamus relief, a relator must demonstrate that (1) the trial court clearly abused its discretion and (2) the relator has no adequate remedy by appeal. *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). We review the imposition of sanctions under an abuse of discretion standard. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007).

### 2. Discovery sanctions

The Texas Rules of Civil Procedure allow for discovery sanctions in the form of "an order striking out pleadings or parts thereof." TEX. R. CIV. P. 215.2(b). Discovery sanctions can be used to adjudicate the merits of a party's claims when a party's hindrance of the discovery process justifies a presumption that its claims lack merit. *Cire v. Cummings*, 134 S.W.3d 835, 841 (Tex. 2004). Discovery sanctions that adjudicate a party's claims and defenses and preclude presentation of the case's merits are considered death penalty sanctions. *See In re RH White Oak,*

10

*LLC*, No. 14-13-00979-CV, 2014 WL 495105 at *6 (Tex. App.—Houston [14th Dist.] Feb. 6, 2014, no pet.); *see also In re FINA Oil & Chem. Co.*, No. 13-98-640-CV, 1999 WL 33589153, at *12 (Tex. App.—Corpus Christi-Edinburg Mar. 11, 1999, orig. proceeding); *Lanfear v. Blackmon*, 827 S.W.2d 87, 91 (Tex. App.—Corpus Christi 1992, orig. proceeding).

A trial court may not impose sanctions that are more severe than necessary to satisfy legitimate purposes. *In re RH White Oak, LLC.*, 2014 WL 495105 at *7 (citing *Cire*, 134 S.W.3d at 839). Any sanction imposed must not be unjust; therefore, a direct relationship must exist between the offensive conduct and sanction imposed and the sanction must not be excessive. *See Nath v. Texas Children's Hosp.*, No. 12-0620, 2014 WL 4252269, at *4–5 (Tex. Aug. 29, 2014) (citing *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding)). When assessing excessiveness, the punishment should "always fit the crime," and sanctions should be no more severe than necessary to further the purposes of sanctions generally. *See Cire*, 134 S.W.3d at 839. A court must consider the availability of appropriate lesser sanctions, and, in all but the most egregious and exceptional cases, the court must first assess lesser sanctions before resorting to case-determinative or death penalty sanctions. *Id*. at 842.

**B.     Analysis**

**1. Striking of Noble's defenses**

11

Maciel contends that striking Noble's defenses does not amount to a "death penalty" sanction because the trial court specifically found that Noble "did not present this court with any evidence that those sanctions being considered by the court would compromise Noble's ability to defend the case on the merits." Maciel asserts that "Noble does not assail that finding, so the order is not a death penalty." We disagree.

During a sanctions hearing, the focus of the inquiry is not the merits of the case; it is on the alleged misconduct and the harm caused by the misconduct. Noble was not required to prove the validity of its pleaded affirmative defenses to preserve them for trial. Therefore, any failure to present evidence of those defenses at a sanctions hearing is not waiver of those defenses. Accordingly, we reject Maciel's argument that Noble has acquiesced to striking these two pleaded defenses.

The trial court's sanction order was improper for two reasons. First, the order prevents Noble from presenting its affirmative defenses even though its sanctionable conduct had already been remedied. Noble's defensive position is that (1) the hole Maciel fell into was open and obvious and (2) Maciel was contributorily negligent in causing his own injuries. These issues are inextricably intertwined. The trial court's order striking Noble's affirmative defenses forecloses an avenue that would enable Noble to present evidence relevant to those

affirmative defenses and support corresponding jury questions that may be requested by Noble. As such, it functions as a death penalty sanction. *See TransAmerican*, 811 S.W.2d at 918; *see also In re FINA Oil & Chem. Co.*, 1999 WL 33589153, at \*12) ("[T]he striking of an affirmative defense effectively adjudicates the defense without a hearing on the merits and is thus in the nature of a 'death penalty' sanction."). Maciel has acknowledged to the trial court that death penalty sanctions are no longer warranted, given that the time-of-incident photos have been produced. We agree.

Second, the death penalty sanction here was improper because the primary purpose of discovery sanctions is to promote compliance, *TransAmerican*, 811 S.W.2d at 917, and that purpose was satisfied without the necessity of the trial court's order. Sanctions carry a heavy hammer, and except in exceptional circumstances when clearly justified, case determinative sanctions should not be imposed unless it is fully apparent no lesser sanctions would ensure compliance with the rules. *Nath v. Texas Children's Hosp.*, 2014 WL 4252269 at \*5. Under *Cire*, the trial court was obligated to consider and test the lesser sanction first before resorting to death penalty sanctions. *Cire*, 134 S.W.3d at 842. The order itself included a lesser sanction—a sanction that Noble admits is "appropriate"—the exclusion of the September 2012 exemplar photographs reconstructing the incident scene without the hole covering.

13

Exclusion of these photographs is an example of a sanction that falls within the two-pronged "just" requirements of *TransAmerican*. First, there is a direct relationship between the offensive conduct and the sanction imposed (substituting staged photographs for actual, time-of-incident photographs that had not been produced), and any prejudice resulting from admission of the replacement photographs will be avoided by their exclusion. *See TransAmerican*, 811 S.W.2d at 917. Second, the exclusion of the staged photographs is not excessive because it still allows Noble to present evidence in support of its defenses.

Further, Noble has been ordered to pay $86,000 in sanctions to compensate for attorney's fees and costs incurred by Maciel pursuing the photographs through discovery and motions to compel. Noble does not challenge that portion of the sanctions order. It, like exclusion of the exemplar photographs, is a lesser sanction that should be considered before resorting to death penalty sanctions. *Nath*, 2014 WL 4252269 at *5; *Cire*, 134 S.W.3d at 842.

When death penalty sanctions have the effect of adjudicating a dispute, there is no adequate remedy by appeal. *TransAmerican*, 811 S.W. 2d at 919; *see also Walker v. Packer*, 827 S.W.2d 833, 843 (Tex. 1982) (orig. proceeding) (appeal is not adequate remedy where "the party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error."). We conclude that the lesser sanctions imposed by the trial court were adequate, the

14

trial court's imposition of death penalty sanctions in addition to those lesser sanctions was an abuse of discretion, and there is no adequate remedy by appeal.

### 2. Monetary sanctions

Noble additionally seeks review of the $50,498.05 in additional monetary sanctions imposed in the March 4, 2014 sanction order that go beyond the $86,000 in sanctions Noble is not disputing.

Monetary sanctions are generally not subject to mandamus because they can be properly reviewed on appeal from a final judgment. *See* TEX. R. CIV. P. 215.2(b)(8); *Braden v. Downey*, 811 S.W.2d 922, 928-9 (Tex. 1991); *In re Xiao Yu Zhong*, No. 01-11-00059-CV, 2011 WL 346316 (Tex. App.—Houston [1st Dist.] Jan. 28, 2011, orig. proceeding); *In re Supportkids, Inc.*, 124 S.W.3d 804, 808 (Tex. App.—Houston [1st Dist.] 2003, orig. proceeding) (holding that party had adequate remedy by appeal from trial court's award of $10,000 in attorney's fees).

There is no evidence in the record that the payment of these additional fees would hinder Noble's ability to defend this litigation. We therefore decline to grant mandamus relief as to the monetary sanctions imposed.

### Conclusion

We conditionally grant Noble's mandamus petition, in part. We direct the trial court to vacate the portion of the March 4, 2014 order striking Noble's

defenses of "open and obvious" and "contributory negligence." We deny the remainder of the petition with regard to monetary sanctions. We are confident the trial court will comply, and our writ will issue only if it does not.

All pending motions are dismissed as moot.

Harvey Brown
Justice

Panel consists of Justices Massengale, Brown, and Huddle.