**Conditionally Granted in Part, Denied in Part, and Opinion Filed February 3, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-01159-CV

## IN RE EMEKA ALUDOGBU AND RESTORATIVE HEALTHCARE, LLC, Relators

**Original Proceeding from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-00112**

## MEMORANDUM OPINION

Before Justices Whitehill, Partida-Kipness, and Pedersen, III
Opinion by Justice Partida-Kipness

In this original proceeding, relators Emeka Aludogbu and Restorative Healthcare, LLC seek a writ of mandamus directing the trial court to vacate its June 21, 2019 sanctions order. In that order, the trial court struck relators' pleadings and awarded real party in interest Renew Hydration, LLC (Renew) $9,073.12 in attorney's fees. After reviewing the petition, Renew's response, and the mandamus record, we conditionally grant the petition as to the order striking relators' pleadings and deny the petition as to the attorney's fees award.

### BACKGROUND

In the fall of 2017, Aludogbu and Renew began a business relationship based on an oral agreement. But they each have different views of the terms of that agreement. Renew maintains that the parties agreed that Aludogbu, a chiropractor, would offer chiropractic and other services under the Renew brand at Renew's premises for a flat payment of $2,000 per month. Renew contends it agreed to assume responsibility for and to finish out the premises to accommodate

Aludogbu's chiropractic treatments, and it purchased equipment necessary for Aludogbu's chiropractic services. So, Renew was surprised when it discovered that Aludogbu had established his own business, Restorative Healthcare, LLC, in June 2018 and, without Renew's approval, had begun operating Restorative from Renew's premises rent-free. When Renew's attempts to negotiate a paid, lease agreement with relators for their use of the premises failed, Renew locked Aludogbu out of the premises.

Aludogbu, in contrast, contends that Renew hired him to establish the proper procedures for Renew's new IV therapy business and to hire and train all new Renew employees. In exchange, Aludogbu maintains Renew agreed to pay him $2,000 per month, agreed to make him a partner in the business if the business was successful, and allowed him to use several offices in the building for his own practice. Aludogbu asserted below that he spent considerable funds remodeling the space to fit the needs of his practice without complaint from Renew. According to Aludogbu, when it became apparent that Renew did not intend to make him a partner, the parties entered into a lease agreement under which Aludogbu would pay $2,500 per month for the space he was using in the building. Aludogbu alleges that Renew unilaterally increased the monthly rent to $6,000 after his first payment and then illegally locked him out of his offices in December 2018.

After the lock-out, Aludogbu obtained a writ of re-entry to the premises from the justice court and went to the premises with a moving truck to remove items. Concerned that Aludogbu would remove Renew's personal property if he regained access, Renew denied Aludogbu access. Then, on January 4, 2019, Renew filed the underlying lawsuit in which it sought to enjoin Aludogbu from taking property from its premises "until the parties have had an opportunity to determine what belongs to whom" and asserted causes of action for breach of contract, fraud, money had and received, and civil theft to recover damages caused by Aludogbu's breach of the agreement. Aludogbu and Restorative Healthcare later filed counterclaims for breach of contract,

quantum meruit, and promissory estoppel, seeking damages related to Renew's alleged breach of the purported lease agreement and alleged promise to make Aludogbu a business partner.

The trial court issued a temporary restraining order on January 4, 2019 restraining and enjoining Aludogbu and Restorative Healthcare from taking the following actions:

1. Moving, removing, disassembling, utilizing, transferring, selling, altering, tampering with or in any way profiting from the use of the property not listed in Exhibits A or B of the property maintained at [the premises];

2. Interfering with, disrupting, or attempting to disrupt" Renew's ongoing business;

3. Destroying, removing, concealing, encumbering, transferring, or otherwise harming or reducing the value of the property not listed in Exhibits A or B maintained at [the premises].

The court set the temporary injunction hearing for January 18, 2019.

The sanctions order at issue in this original proceeding relates to false accusations made by Aludogbu against Renew in motions filed after the trial court issued the temporary restraining order.

### A. Aludogbu's motions accusing Renew of stealing the Ondamed machine

On January 7, 2019, Aludogbu filed an "Application and Affidavit for Writ of Sequestration" and a "Motion to Issue a Writ of Arrest" in which he accused Renew of refusing to surrender possession of certain property listed in Exhibits A and B to the temporary restraining order. Specifically, Aludogbu alleged that Renew would not allow relators to remove a blue chiropractic table listed in Exhibit A and "have stolen the Ondamed Complete Solution machine listed in Exhibit B of the order along with other miscellaneous items." Aludogbu signed the affidavit in support of the motion to issue a writ of arrest and his attorney, Alex L. Davis, III, signed the affidavit in support of the application for writ of sequestration. Davis signed his affidavit on information and belief based on evidence and statements provided to him by "the Defendants in this case."

–3–

Then, on January 9, 2019, Aludogbu and Restorative Health filed a motion to show cause in which they accused Renew of failing to comply with the January 4, 2019 temporary restraining order by failing to allow Aludogbu to remove the blue chiropractic table and the Ondamed machine. They asked the court to hold a show cause hearing, to find Renew in contempt, and to place Francis Miro, one of Renew's members, in custody until he complied with the temporary restraining order. On January 10, 2019, the trial court issued an order scheduling the show cause hearing for January 28, 2019.

### B. Aludogbu's deposition

On January 10, 2019, Renew filed an emergency motion for expedited discovery and extension of the temporary restraining order seeking Aludogbu's deposition before the injunction hearing and a new date for that hearing. The court granted the motion for expedited discovery, extended the temporary restraining order to February 1, 2019, and re-set the injunction hearing for February 1, 2019.

In his deposition, Aludogbu testified that he did not then have physical possession of, access to, or control of the Ondamed machine, had not seen the Ondamed machine since the day he was locked out of Renew, and did not know where the Ondamed machine was located. Aludogbu also denied that the Ondamed machine was located at AXE Health, a facility where Aludogbu was offering chiropractic services, and denied any knowledge of the last time he was physically at the AXE Health facility. When Aludogbu was shown photos and video footage showing the Ondamed machine at AXE Health, he testified that he borrowed the machine shown in the video and photos from Dr. Pamela Smith, that machine is owned by Dr. Smith, and he does not own the machine shown in the video and photos.

The Ondamed machine owned by Aludogbu and located at Renew before the lock out had Serial No. M18017. A photo of the Ondamed machine located at AXE Health, which Aludogbu

said was owned by Dr. Smith, showed that the machine located at AXE Health bore the same serial number as the machine owned by Aludogbu that he claimed Renew had stolen. When shown that photo and asked how a machine he borrowed from Dr. Smith could have the same serial number as his machine, Aludogbu said that he did not know and he would be surprised if that machine was actually his machine.

Aludogbu eventually admitted, however, that he placed his Ondamed machine at AXE Health, but he did not know how long the machine had been at AXE Health. Aludogbu also maintained that his prior testimony and affidavit statements were truthful because the machine was not at Renew when he returned there to collect his things. On cross-examination, he testified that sometime "after January 5th" the machine was given to him "by somebody with the Plaintiffs" and that he did not have it in his possession when he told his lawyer it was missing. On further examination by Renew's counsel, however, Aludogbu conceded that he did not know when he took possession of the machine, where he took possession of the machine, or who returned the machine to him.

Following the deposition, the parties entered an agreed temporary injunction that enjoined Aludogbu and Restorative Health from the same conduct set out in the temporary restraining order and set the underlying case for trial on June 11, 2019. The show cause hearing on relators' motions and the temporary injunction hearing were also cancelled.

### C. Renew's motion for sanctions

On March 7, 2019, Renew filed a motion for sanctions against Aludogbu and Restorative Health. In the motion, Renew argued that relators' application for writ of sequestration, motion for writ of arrest, and motion to show cause were based on false allegations that Renew stole the Ondamed machine. Renew maintained that, by filing those motions, relators and their counsel

signed, filed, and prosecuted false and groundless claims against Renew in violation of Rule 13 of the rules of civil procedure and section 10.001 of the civil practice and remedies code.

Renew supported its sanctions motion in part with exhibits confirming the serial number of the Ondamed machine owned by Aludogbu, excerpts from Aludogbu's deposition, the photos and video footage showing the Ondamed machine found at AXE Health bore the same serial number as Aludogbu's machine, and video footage purportedly showing Aludogbu rolling the Ondamed machine out of Renew's office on December 28, 2018. Renew argued those exhibits and other evidence proved Aludogbu lied about his possession of the machine and knew he was falsely accusing Renew of theft when he signed his affidavit in support of the motion for writ of arrest on January 7, 2019 and filed the motions.

Renew requested attorney's fees of $9,073.12 for legal work performed to discover that Aludogbu had possessed the machine since December 28, 2018, was lying about the location of the machine, and was falsely accusing Renew of theft. Renew also asked the trial court to strike Aludogbu's pleadings and to render a default judgment against him. The trial court held a hearing on the sanctions motion on April 15, 2019 and took the matter under advisement. On June 21, 2019, the trial court signed an order awarding sanctions against Aludogbu pursuant to civil procedure Rule 215.2(b)(8) and Rule 13, ordering relators to pay Renew attorney's fees of $9,073.12, and striking relators' pleadings.

Relators present two issues in their petition. First, they complain the trial court abused its discretion by striking their pleadings. Second, they complain the trial court abused its discretion by granting attorney's fees in the amount granted and without adequate proof of fees.

**STANDARD OF REVIEW**

To obtain mandamus relief, a relator must show both that the trial court has clearly abused its discretion and that relator has no adequate remedy by appeal. *In re Prudential Ins. Co.*, 148

S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). An abuse of discretion occurs when a trial court's ruling is arbitrary and unreasonable, made without regard for guiding legal principles or supporting evidence. *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 712 (Tex. 2016); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding) (a clear abuse of discretion occurs when a trial court "reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law"). Similarly, a trial court abuses its discretion when it fails to analyze or apply the law correctly. *In re Nationwide Ins.*, 494 S.W.3d at 712.

"The second requirement—appeal is an inadequate remedy—is fulfilled where a party's ability to present a viable claim or defense at trial is either completely vitiated or severely compromised." *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018). When a court imposes death penalty sanctions that have the effect of adjudicating the dispute by striking pleadings, dismissing an action, or rendering a default judgment, but which do not result in the rendition of an appealable judgment, there is generally no adequate remedy by appeal. *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 919 (Tex. 1991) (orig. proceeding).

Here, relators lack an adequate remedy by appeal as to the order striking their pleadings because that order vitiates their affirmative defense of consent to Renew's claims and prevents relators from presenting evidence on their counterclaims relating to the alleged oral lease agreement. The only question before this Court regarding the death penalty sanctions, therefore, is whether the trial court clearly abused its discretion by ordering those sanctions.

The same is not true for the trial court's award of attorney's fees to Renew. "Generally, orders awarding attorney's fees, even those imposed as sanctions, are reviewable on appeal and mandamus will not issue." *Baluch v. O'Donnell*, 763 S.W.2d 8, 11 (Tex. App.—Dallas 1988, no writ) (citing *Street v. Second Court of Appeals*, 715 S.W.2d 638, 639 (Tex. 1986) (orig. proceeding)). "Mandamus lies to correct the award of interim fees only in extreme cases in which

a 'party's ability to prosecute the case further is jeopardized' by the party's payment of, or inability to pay, the fees." *In re Chu*, 134 S.W.3d 459, 468 (Tex. App.—Waco 2004, orig. proceeding) (quoting *In re Ford Motor Co.*, 988 S.W.2d 714, 722 (Tex. 1988)); *In re Bissell*, 109 S.W.3d 87, 89 (Tex. App.—El Paso 2003, orig. proceeding).

Here, the trial court ordered relators to pay Renew $9,073.12 in attorney's fees. Relators have not asserted that the payment of this amount would jeopardize their ability to continue the litigation. In fact, relators make no arguments that they lack an adequate remedy by appeal regarding the fees award. Accordingly, we deny relators' petition for writ of mandamus as to the award of attorney's fees. *See, e.g. In re RH White Oak, LLC*, 442 S.W.3d 492, 503 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding) (denying mandamus relief because relators have not explained why the sanctions are so severe as to threaten their ability to continue litigation).

## DISCUSSION

Having decided relators' second issue against them, we turn to the only remaining issue before us: whether the trial court abused its discretion by striking relators' pleadings.

### A.      Applicable Law

Sanctions for abuse of the discovery process are authorized by Rule 215.2. TEX. R. CIV. P. 215.2; *Shops at Legacy (Inland) Ltd. P'ship v. Fine Autographs & Memorabilia Retail Stores Inc.*, 418 S.W.3d 229, 232 (Tex. App.—Dallas 2013, pet. denied). If a trial court finds a party is abusing the discovery process in seeking, making, or resisting discovery, then the trial court may, after notice and hearing, impose any appropriate sanction authorized by rule 215.2(b)(1)-(5) and (8). TEX. R. CIV. P. 215.3; *Shops at Legacy*, 418 S.W.3d at 232. Discovery sanctions serve three purposes: (1) to secure the parties' compliance with the discovery rules; (2) to deter other litigants from violating the discovery rules; and (3) to punish parties who violate the discovery rules. *Shops at Legacy*, 418 S.W.3d at 232.

If a party signs a pleading, motion or other paper in violation of Rule 13, the court, after notice and hearing, "shall impose an appropriate sanction under Rule 215, upon the person who signed it, a represented party, or both." TEX. R. CIV. P. 13. Among the sanctions available under rule 215.2 are orders "striking out pleadings or parts thereof," "dismissing with or without prejudice the actions or proceedings or any part thereof," and "rendering a judgment by default against the disobedient party." TEX. R. CIV. P. 215.2(b)(5). These sanctions, which adjudicate a claim and preclude presentation of the merits of the case, are often referred to as "death penalty" sanctions. *Shops at Legacy*, 418 S.W.3d at 232; *Perez v. Murff*, 972 S.W.2d 78, 81 (Tex. App.— Texarkana 1998, pet. denied) (any sanctions which are "case determinative" constitute "death penalty" sanctions).

Although the choice of sanction is left to the sound discretion of the trial judge, the sanctions imposed must be just. *TransAmerican*, 811 S.W.2d at 916; *Shops at Legacy*, 418 S.W.3d at 232; TEX. R. CIV. P. 215.2. When determining whether a trial court's imposition of sanctions was just, an appellate court considers the following two standards: (1) whether there is a "direct relationship" between the abusive conduct and the sanction imposed; and (2) whether the sanction is excessive. *TransAmerican*, 811 S.W.2d at 917; *Shops at Legacy*, 418 S.W.3d at 232.

"A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. It follows that a court must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance." *Shops at Legacy*, 418 S.W.3d at 232–33 (quoting *TransAmerican*, 811 S.W.2d at 918). Under this standard, the trial court need not test the effectiveness of each available lesser sanction by actually imposing the lesser sanction before issuing the death penalty. *Id.* at 233. Rather, the trial court must analyze the available sanctions and offer a reasoned explanation as to the appropriateness of the sanction imposed. *Id.*

Death penalty sanctions are harsh and may be imposed as an initial sanction only in the most egregious and exceptional cases "when they are clearly justified and it is fully apparent that no lesser sanctions would promote compliance with the rules." *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex. 1993). "The imposition of very severe sanctions is limited, not only by these standards, but by constitutional due process." *TransAmerican*, 811 S.W.2d at 917–18. Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit. *Id.*

Further, the record must include some explanation to justify the granting of death penalty sanctions. *Shops at Legacy*, 418 S.W.3d at 233. "A conclusory statement that no lesser sanction would be effective is not sufficient to constitute the required analysis of available sanctions and the reasoned explanation of the sanction's appropriateness." *In re Estate of Perez-Muzza*, 446 S.W.3d 415, 425–26 (Tex. App.—San Antonio 2014, pet. denied) (citing *GTE Commc'ns Sys. Corp.*, 856 S.W.2d at 729 and *Shops at Legacy*, 418 S.W.3d at 234).

**B.      Application of Law to Facts**

Here, the sanctions order states that the court "has considered lesser sanctions, and now is of the opinion that the amount ordered above adheres to guiding principles of law authorized by Rule 215.2(b)(l)-(5) and (8) and is limited to costs associated with Plaintiff's preparation to address Defendants' allegations of theft in the anticipated Temporary Injunction and Show Cause Hearing and Defendants' pleadings being stricken from the record." Other than this single sentence, however, there is no indication in the record that the trial court considered a less stringent sanction. The trial judge did not discuss alternatives to the proposed sanctions during the hearing on the motion for sanctions. The trial judge simply asked Renew's counsel what sanctions he was seeking from the court and, when told Renew wanted the pleadings stricken, the judge asked "is that the

least punitive level of sanctions." Renew's counsel responded that he would "leave that to the Court" but noted that his client wanted to recover, at a minimum, the amount of fees incurred to uncover Aludogbu's lies concerning the Ondamed machine. The trial judge took the matter under advisement at the end of the hearing and asked counsel to provide the court with case law guidance to decide if death penalty sanctions were warranted here. The trial court did not state that it had concluded that lesser sanctions would not be effective and, as such, did not explain its reasons for concluding that lesser sanctions would not be effective. The conclusory statement in the order that the court "has considered lesser sanctions" is not sufficient to constitute the required analysis of available sanctions and the reasoned explanation of the sanction's appropriateness. *GTE Commc'ns Sys. Corp.*, 856 S.W.2d at 729; *Shops at Legacy*, 418 S.W.3d at 234; *In re Estate of Perez-Muzza*, 446 S.W.3d at 425–26. Accordingly, the trial court abused its discretion by striking relators' pleadings as a sanction.

Moreover, striking relators' pleadings was an excessive and unjust sanction in this case. As explained in *TransAmerican*, discovery sanctions can be used to adjudicate the merits of a party's claims when a party's hindrance of the discovery process justifies a presumption that its claims lack merit. *TransAmerican*, 811 S.W.2d at 918. A presumption that a party's claim lacks merit is not justified "when the party makes a false statement about matters unrelated to the core elements of [the cause of action]." *Fletcher v. Blair*, 874 S.W.2d 83, 85–86 (Tex. App.—Austin 1994, writ denied) (death penalty sanctions not justified, even though plaintiff had lied about her education and income, when lies did not directly relate to the underlying claim for personal injuries).

Here, Renew sought sanctions against relators because Aludogbu falsely accused Renew of theft in three motions filed before the temporary injunction hearing and repeatedly lied about whether he had possession of the machine he accused Renew of taking. The lies Aludogbu told

about his possession of the Ondamed machine and the false allegation that Renew stole the machine, however, are unrelated to the causes of action asserted in the main litigation. Renew sued relators for breach of contract, fraud, money had and received, and civil theft to recover damages caused by Aludogbu's alleged breach of the oral agreement. Aludogbu and Restorative Healthcare brought counterclaims for breach of contract, quantum meruit, and promissory estoppel seeking damages related to Renew's alleged breach of the purported lease agreement and alleged promise to make Aludogbu a business partner. The location and possession of the Ondamed machine when the relationship ended is irrelevant to those causes of action and the damages alleged by the parties. Although Aludogbu's conduct likely did not bolster his credibility in the eyes of the trial judge, that conduct does not justify a presumption that relators' claims lack merit because Aludogbu's false statements concerned matters unrelated to the core elements of the causes of action asserted in the case, and there is not a direct relationship between the offensive conduct and the sanction imposed. The trial court abused its discretion by striking relators' pleadings.

## CONCLUSION

We conclude the trial court abused its discretion by ordering death penalty sanctions against relators, and relators lack an adequate remedy by appeal as to those sanctions. However, relators have an adequate remedy by appeal regarding the award of fees against them. Accordingly, we conditionally grant the petition for writ of mandamus as to the portion of the sanctions order striking relators' pleadings and deny the petition as to the award of attorney's fees. We direct the trial court to issue a written ruling within thirty days of the date of this opinion vacating the portion of the sanctions order striking relators' pleadings.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

191159F.P05

–12–