**Petition for Writ of Mandamus Granted and Majority and Dissenting Opinions filed July 14, 2016.**



In The

# Fourteenth Court of Appeals

### NO. 14-16-00058-CV

## IN RE FIRST TRANSIT INC. AND LATOSHA R. EMANUEL, Relators

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**133rd District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-08649**

## MAJORITY OPINION

On January 27, 2016, relators First Transit Inc. and Latosha R. Emanuel filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. § 22.221 (West 2004); *see also* Tex. R. App. P. 52. Relators, the defendants below, are hereafter referred to as "Defendants." In the petition, Defendants ask this court

to compel the Honorable Jaclanel McFarland, presiding judge of the 133rd District Court of Harris County, to vacate her January 14, 2016 sanctions order that prohibits Defendants' expert, Dr. Mike James, from testifying at trial.

We conditionally grant the petition for writ of mandamus.

## Background

This action arises from a December 16, 2012 accident on Interstate 45 North at Main Street in Houston, Texas, in which José Caballero was killed after being struck and dragged over 100 feet by a METRO bus operated by Defendant First Transit, Inc., which was driven by its employee, Defendant Latosha Emanuel. Mr. Caballero's parents, Ilda and José Dore Caballero ("Plaintiffs"), brought suit against Defendants under the Texas wrongful-death and survival statutes.

The accident involved five vehicles and seven collisions. The roadway was four lanes wide, and it was raining. Judy Jordan had a blow out in her 1994 Honda Accord while traveling northbound on I-45. Ms. Jordan brought her car to a stop along the inside shoulder (left side) of the highway at the Main Street overpass. Subsequently, multiple collisions and events occurred that ultimately resulted in the death of José Caballero.

Defendants retained an accident reconstruction expert, Dr. Mike James, who, the day after the accident, inspected, measured, and photographed the METRO bus and the accident site. The next day, Dr. James inspected the other vehicles involved in the accident.

*Discovery Disputes Regarding Dr. Mike James*

Below is a chronology of the parties' discovery disputes related to Dr. James:

- On **September 22, 2014**, the trial court issued a docket control order setting the case for trial on April 20, 2015. The order requires Defendants to make expert designations pursuant to Texas Rule of Civil Procedure 194.2(f) by January 18, 2015. The order provides that discovery was to end March 20, 2015, and incomplete discovery was not to delay trial.

- On **November 11, 2014**, Plaintiffs filed a Motion to Compel and Request for Relief (including sanctions) seeking to compel the production of materials related to First Transit's policies and investigation into the subject accident, video from the subject METRO bus of the accident, materials regarding the bus itself, and employee files related to Defendant Emanuel.

- On **December 15, 2014**, the trial court signed an order that Defendants comply with requests for production, including requests nine (which sought all drawings, videotapes, maps or sketches of the scene and video from the bus), ten (which sought all photographs of any vehicles), and eighteen (which asked for copies of all notes, writings and reports that any defendant has prepared about its understanding of how the accident occurred). The next day, Defendants' counsel sent a DVD "containing [documents] Bates number First Transit 2021."

- On **January 19, 2015**, Defendants filed their First Amended Responses to Requests for Disclosure. The responses disclosed Dr. Mike James as a retained testifying expert and the subject matters on which he would testify, but did not disclose the general substance of Dr. James's opinions and a brief summary of the basis for them, as required by Rule 194.2(f)(3) of the Texas Rules of Civil Procedure.

3

The responses also identified seven METRO police officers as non-retained experts relating to their investigation of the accident, and Dr. Jennifer Ross as a non-retained expert relating to "the events and causes related to José E. Caballero's death, his injuries and their significance, and the autopsy."

- On **January 21, 2015**, Plaintiffs filed a motion to compel Dr. James's expert materials under Rule 194.2(f).

- At a hearing on **February 2, 2015**, the trial court signed an order that Defendants produce the following items within ten days (by February 12, 2015):

  [1] all items required under TRCP 194.2(f); [2] the complete file of all designated experts, including Mike James; … [4] all calculations performed or derived from any testing or measurements, including those relevant to any reconstruction or animation that has been performed; [5] all reports outlining the experts' opinions and/or impressions; [6] all reconstruction, animation and accident depiction(s) generated, created or reviewed by any designated expert; and [7] any and all documents, tangible things, reports, models or data compilations that have been provided to, reviewed by, or prepared by any designated expert, including Mike James….

- On **February 12, 2015**, Defendants' counsel asserted in a letter that he produced "Dr. James's entire file." The produced file includes a five-page handwritten memo from Dr. James to Defendants' counsel entitled: "Caballero Accident 12/16/12 Preliminary Opinions Order of Impacts." In his letter, Defendants' counsel also stated that "Dr. James will utilize the Simulation Model of Automobile Collisions (SMAC) program referenced in his CV, but has not run the program for this case at this time."

- On **March 10, 2015**, Plaintiffs' counsel sent a letter that asked Defendants' counsel to send clean copies of Dr. James's photographs by e-mail, as well as copies of emails referenced in Dr. James's file that were not produced, and to identify the photographs referenced in Dr. James's memo to Glen Fahl (Defendants' prior attorney). Defendants' counsel responded by enclosing color copies of the photographs, the quality of which he "recognize[d]" was "low." He also provided cross-references to photographs mentioned in Dr. James's memo to Glen Fahl.

- On **March 31, 2015**, the trial court issued a docket control order resetting the case for trial on **October 19, 2015**.

- At a **July 13, 2015** hearing, the parties entered into an agreement on the record that Dr. James's animation would be produced within 45 days, and at least one week prior to the deposition of Dr. James.

- On **August 10, 2015**, Defendants' counsel sent a letter in which counsel represented that "Dr. James has not created an animation" and that Dr. James's preliminary drawings were enclosed.

- On **September 23, 2015**, the trial court signed a docket control order resetting the case for trial on **February 1, 2016**.

- On **October 21, 2015**, Plaintiffs filed a motion to compel Dr. James's expert file.

- On **November 2, 2015**, the trial court heard Plaintiffs' motion to compel and signed an order compelling the production of Dr. James's entire file, including all reports and documents of any type outlining Dr. James's opinions and all reconstruction and accident depictions generated or created by Dr. James. The order warns that "in light of Defendants' failure to comply with this Court's previous orders of 12/15/2014 and 02/02/2015 regarding production of Dr. James' expert file, that Defendants' failure to comply with this Order, shall result in

5

Defendants' prohibition to elicit any testimony or introduce any evidence from Dr. Mike James at the time of trial."

- On **November 6, 2015**, Defendants' counsel corresponded with Plaintiffs' counsel with regard to the trial court's November 2, 2015 Order and informed Plaintiffs' counsel that "all ha[d] been produced." Further, Defendants' counsel forwarded newly made color copies of photographs as requested by Plaintiffs' counsel.

- Plaintiffs noticed Dr. James's deposition for **November 23, 2015.** Defendants' counsel cancelled Dr. James's deposition on the Friday before the scheduled Monday deposition because Dr. James had a broken tooth.

- On **December 18, 2015,** Plaintiffs' counsel noticed Dr. James's deposition for **January 11, 2016**. The notice included a subpoena duces tecum.

- On **January 8, 2016,** the Friday before the Monday **January 11** deposition of Dr. James, and less than 30 days before the **February 1, 2016** trial date, Defendants' counsel corresponded with Plaintiffs' counsel forwarding material prepared by Dr. James on **January 6-7, 2016**. Enclosed were approximately forty pages of graphic materials and numerical outputs of a reconstruction of the accident generated by Dr. James using the SMAC computer program (the "**SMAC Documents**"). These documents include 40 pages of Delta V calculations and SMAC collision and trajectory accident-reconstruction output images and accident depictions created by Dr. James, purporting to show how Mr. Caballero was propelled under the METRO bus and killed.

- On **January 8, 2016,** Plaintiffs' counsel corresponded with Defendants' counsel, stating that Dr. James's deposition is cancelled and that Plaintiffs will be "seeking relief from the Court

regarding conduct with regard to the items/documents produced and lack of compliance with the Court's Order of 11/2/2015."

*Plaintiffs' Motion to Exclude All of Dr. James's Testimony*

On January 11, 2016, Plaintiffs filed a "Motion to Exclude Testimony of Dr. Mike James and for Relief under TRCP 215 and TRCP 193.6." Defendants filed their Response in Opposition. On January 14, 2016, the trial court heard Plaintiffs' motion to exclude, and signed an Order prohibiting Defendants from offering any testimony, evidence, or opinions from Dr. Mike James at the time of trial. Defendants seek mandamus relief from this Order.

# Mandamus Standard

To obtain mandamus relief, a relator generally must show both that the trial court has clearly abused its discretion and that relator has no adequate appellate remedy. *See In re Prudential Ins. Co.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). The appellate court reviews the trial court's application of the law de novo. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

7

## Legal Requirements for Sanctions

In their January 27, 2016 motion to exclude the testimony of Dr. Mike James, Plaintiffs sought sanctions under Rules 215.2, 215.3, and 193.6 of the Texas Rules of Civil Procedure. A discretionary sanction imposed under Rules 215.2 and 215.3 must be just. *See* Tex. R. Civ. P. 215.2, 215.3; *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding). Whether a sanction is just is measured by two standards. First, a direct relationship must exist between the offensive conduct and the sanctions imposed. *Id*. "Second, just sanctions must not be excessive. The punishment should fit the crime. A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes." *Id*. Courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance. *Id*.

Sanctions that have the effect of adjudicating a claim or precluding a decision on the merits of the case are referred to as "death penalty" sanctions. *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 732 (Tex. 1993). "Death penalty" sanctions are harsh and may be imposed as an initial sanction only in the most egregious and exceptional cases. *Cire v. Cummings*, 134 S.W.3d 835, 842 (Tex. 2004). Death penalty sanctions may be imposed in the first instance only "when they are clearly justified and it is fully apparent that no lesser sanctions would promote compliance with the rules." *Tanner*, 856 S.W.2d at 725. Before imposing a death-penalty sanction, a trial court must consider whether lesser sanctions would fully promote compliance. *Cire*, 134 S.W.3d at 839–40. "Under

8

this standard, the trial court need not test the effectiveness of each available lesser sanction by actually imposing the lesser sanction on the party before issuing the death penalty; rather, the trial court must analyze the available sanctions and offer a reasoned explanation as to the appropriateness of the sanction imposed." *Id.* at 840 (citing *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 883 (Tex. 2003) (noting that the record should "contain some explanation of the appropriateness of the sanctions imposed")). This standard does not require a trial court to list each possible lesser sanction in its order and then explain why each would be ineffective. *Id.* at 842.

"The absence of an explanation of how a trial court determined to impose an especially severe sanction is inadequate. A trial court is required to explain that it considered lesser sanctions before imposing death penalty sanctions." *Citibank, N.A. v. Estes*, 385 S.W.3d 671, 676 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Even when the record reflects intentional discovery abuse, the trial court is still required to explain that it considered lesser sanctions before imposing sanctions that preclude a party's ability to present the merits of its claims. *Primo v. Rothenberg*, No. 14-13-00794-CV, 2015 WL 3799763, at \*24 (Tex. App.—Houston [14th Dist.] June 18, 2015, pet. denied) (mem. op.). "Thus, a trial court either must impose lesser sanctions first or must clearly explain on the record why the case is an exceptional case where it is fully apparent that no lesser sanctions could promote compliance." *Knoderer v. State Farm Lloyds*, No. 06-13-00027-CV, 2014 WL 4699136, at \*11 (Tex. App.—Texarkana Sept. 19, 2014, no pet.) (mem. op.).

9

Moreover, a conclusory explanation is insufficient. *See Tanner*, 856 S.W.2d at 729 (giving no deference to unsupported conclusions in the trial court's order, which stated without explanation that lesser sanctions would have been ineffective); *Associated Air Ctr. LP v. Tary Network Ltd.*, No. 05–13–00685–CV, 2015 WL 970664, at \*6 (Tex. App.—Dallas Mar. 4, 2015, no pet.) (mem. op.) ("[T]he sanctions order simply recites, without any further explanation or analysis, that lesser sanctions were considered but 'would not promote compliance with the Texas Rules of Civil Procedure.' Beyond this general statement and description of the offensive conduct, the trial court in this case offered no reasoned explanation of the appropriateness of the sanctions imposed.").

## The Trial Court's Exclusion of Defendants' Sole Retained Expert Equates to a Death-Penalty Sanction.

We believe that under the relevant case law and the circumstances of this case, the trial court's exclusion of all of Dr. James's testimony equates to a death-penalty sanction.

Although death-penalty sanctions most often are thought of in the context of striking pleadings or rendering a default judgment, any sanctions that are case determinative may constitute death-penalty sanctions, including those that exclude essential evidence. *In re RH White Oak, LLC*, 442 S.W.3d 492, 501 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding) (emphasis added). For example, in *In re Alere Women's & Children's Health, LLC*, 357 S.W.3d 809, 814–15 (Tex. App.—Houston [14th Dist.] 2011, no pet.), a nursing-malpractice action against the relator, the trial court struck eight of the relator's expert witnesses because the relator violated

10

section 74.351(k) of the Civil Practices and Remedies Code by disclosing to these experts a preliminary expert report filed by the plaintiff. Our court concluded that the trial court's striking these expert witnesses amounted to a death-penalty sanction because all of the experts that relator designated for the purpose of testifying about negligence and causation had been stricken. *Id*. at n. 1. Our court held that the trial court abused its discretion by not considering lesser sanctions, stating:

> Our review of the record from the December 12, 2011, hearing in this case reveals the court did not consider lesser sanctions before imposing death penalty sanctions. The record does not contain any explanation of the appropriateness of the sanctions imposed. *See Chrysler Corp*., 841 S.W.2d at 852–53. Even if we accepted the real party's contention that relator should not have permitted its experts to review the preliminary expert report, the trial court should have considered lesser sanctions to accomplish the same goal of prohibiting any reference to the preliminary report.

*Id*. at 813.

The decisions of other courts of appeals likewise have recognized that the striking of a party's witnesses may constitute a death-penalty sanction.[1]

The accident here involved five separate vehicles and seven collisions. The issues of negligence and causation appear to be highly complex. This is precisely the kind of case where the testimony of an accident reconstructionist would be helpful and perhaps essential to Defendants' defense. Dr. James is Defendants'

---

[1] *See Revco, D.S., Inc. v. Cooper*, 873 S.W.2d 391, 396 (Tex. App.—El Paso 1994, orig. proceeding) (exclusion of experts in medical-malpractice case requiring expert testimony has a "death penalty" effect); *Perez v. Murff*, 972 S.W.2d 78, 82 (Tex. App.—Texarkana 1998, pet. denied) (exclusion of appellants' undesignated witnesses precluded them from presenting their case, and thus, constituted a "death penalty" sanction).

11

only retained expert on negligence and causation and the exclusion of all of his testimony will effectively preclude the presentation of Defendants' defense. Thus, we conclude that the trial court's exclusion of all of Dr. James's testimony equates to a death-penalty sanction to which the above-discussed requirements for a death-penalty sanction apply. *See id*.

## Defendants Did Not Comply with the Discovery Order.

Plaintiffs claimed great surprise and prejudice by Defendants' production of the SMAC Documents only two days before Dr. James was to be deposed and less than 30 days before trial. Plaintiffs argued that such production was untimely and that it violated the trial court's November 2, 2015 Order ("November 2 Order"), which orders Defendants to: (1) provide Dr. James's entire expert file to Plaintiffs' counsel and that such file shall include, among other things, all reports and documents of any type outlining Dr. James's opinions and "all reconstruction and accident depictions generated, created or reviewed" by Dr. James, and (2) produce said items within five days (by November 7, 2016). The Order warned that "in light of Defendants' failure to comply with this Court's previous orders of 12/15/2014 and 02/02/2015 regarding production of Dr. James' expert file, that Defendants' failure to comply with this Order, shall result in Defendants' prohibition to elicit any testimony or introduce any evidence from Dr. Mike James at the time of trial."

The SMAC Documents outline some of Dr. James's opinions, depict a reconstruction of the accident, and are part of Dr. James's file. They therefore are encompassed by the November 2 Order.

Defendants argue that they did not violate the November 2 Order by producing the SMAC Documents on January 8, 2016 (only three weeks before trial) because Dr. James did not create the SMAC Documents until January 6 and 7, 2016, and the November 2 Order allegedly only compelled the production of documents that existed when the Order was signed.

We disagree with Defendants' interpretation of the November 2 Order. We believe that the intent of the November 2 Order was to set a final deadline for Defendants to produce all of Dr. James's expert materials and documents outlining his opinions by November 7, 2016. Thus, at the hearing of the motion to exclude, the trial court stated that Plaintiffs were supposed to have gotten anything that Dr. James planned to rely on at trial a long time ago. This intent is also apparent from both the circumstances and the provisions of the November 2 Order. The trial court had previously ordered Defendants to produce the complete file of Dr. James and all items required under Rule 194.2(f) (which includes all documents prepared by the expert in anticipation of his testimony) by February 12, 2015. Plaintiffs needed all of Dr. James's expert materials as soon as possible because at that time, trial was set for April 20, 2015.

Similarly, the November 2 Order was issued less than sixty days before the February 1, 2016 preferential trial date. Dr. James had not yet been deposed. As explained in their motion to compel, Plaintiffs needed all of Dr. James's expert

13

materials as soon as possible to have adequate time to prepare for Dr. James's deposition and for trial. Further, the November 2 Order warned that if Defendants fail to produce Dr. James's expert file and materials by November 7, 2016, then Dr. James will be prohibited from offering any testimony at trial. This warning would have been meaningless if the Order permitted Dr. James to evade the November 7 deadline by simply delaying the preparation of the materials he intended to use at trial.

Defendants also should have been aware that they had a duty under Rule 194.2(f) to disclose all documents prepared by Dr. James in anticipation of his testimony. The November 2 Order is consistent with Rule 193.5, which requires a party to supplement discovery *reasonably promptly*. *See* Tex. R. Civ. P. 193.5(b). It is presumed that a supplemental response made less than 30 days before trial was not made reasonably promptly. *See id.* Thus, the purpose of the November 2 Order was to prevent any surprise or ambush by Dr. James before his deposition and the fast approaching trial.

We therefore do not believe that Defendants could evade the November 2 Order by simply having Dr. James create the SMAC Documents on the eve of his deposition only three weeks before trial. The November 2 Order did not require Dr. James to create any SMAC Documents, but if Defendants intended for Dr. James to do so, the order required Defendants to produce such documents by November 7. Thus, the trial court could have reasonably concluded that Defendants violated the November 2 Order by producing the SMAC documents on January 8, 2016, less than 30 days before the February 1, 2016 trial.

14

Because the SMAC Documents were not timely produced, we believe the trial court had discretion to impose an appropriate sanction that fit the transgression. One possible sanction would have been to exclude the SMAC Documents, testimony regarding their content, and testimony and opinions based on Dr. James's use of the SMAC program. However, the trial court went further and, without any explanation, prohibited Dr. James from offering any testimony at trial, which equates to a death-penalty sanction.

## The Trial Court Abused its Discretion.

As discussed above, for this court to uphold a death-penalty sanction, the record must show that the trial court considered imposing lesser sanctions and offered a reasoned explanation as to the appropriateness of the sanction imposed. *See Cire*, 134 S.W.3d at 840; *Citibank, N.A.*, 385 S.W.3d at 676. "We require courts to consider less stringent sanctions and whether such lesser sanctions would fully promote compliance." *Spohn Hosp.*, 104 S.W.3d at 882. The record does not show that the trial court met these requirements. The record is not clear that the trial court considered whether imposing lesser sanctions (such as excluding just the SMAC Documents and testimony regarding their content, instead of excluding all of Dr. James's testimony) would have achieved Defendants' compliance with the trial court's discovery orders. Defendants arguably would have been in compliance absent their untimely preparation and production of the SMAC Documents. Nor does the record contain any explanation by the trial court as to why the severe sanction of excluding all of Dr. James's testimony is appropriate. Because the record does not show that the trial court met the requirements for imposing this

15

equivalent of a death- penalty sanction, we conclude that the trial court abused its discretion.

In the November 2 Order, the trial court warned that Defendants' failure to comply would result in the exclusion all of Dr. James's testimony. That warning, however, does not justify the imposition of a death-penalty sanction. Regardless of the warning, the trial court still had a duty to impose a punishment that fit the transgression and to consider lesser sanctions. *See Cire*, 134 S.W.3d at 839–40. On point is *CRSS Inc. v. Montanari*, 902 S.W.2d 601, 612 (Tex. App.—Houston [1st Dist.] 1995, writ denied), in which the court of appeals noted that although the trial judge warned in his June 8, 1991 order that defendants' pleadings might be stricken in the future, neither of the trial judges had actually imposed lesser sanctions before the court struck defendants' pleadings, despite five previous requests for sanctions. The court of appeals held: "Threatened, prospective, potential, or conditional sanctions do not constitute the imposition of a lesser sanction. *See Chrysler,* 841 S.W.2d at 850 ('conditional' sanctions were not an imposition of a required lesser sanction). Nor does an order to compel under rule 215(b)(1) qualify as a 'lesser sanction.' *Bair*, 838 S.W.2d at 681." *Id.*

## The Trial Court's Order May Not Be Affirmed Based on Defendants' Failure to Disclose Dr. James's Opinions.

Plaintiffs argue that the trial court's exclusion of all of Dr. James's testimony should be affirmed because the record shows that Defendants did not comply with Rule 194.2(f)(3), which required Defendants to disclose Dr. James's

16

mental impressions and opinions, as well as a summary of the basis for those opinions and impressions. *See* Tex. R. Civ. P. 194.2(f)(3).

Although Defendants' First Amended Responses to Requests for Disclosure disclose the subject matters on which Dr. James will testify, they do not disclose the general substance of Dr. James's opinions or provide a brief summary of the basis for his opinions. For this reason, Plaintiffs argue that all of Dr. James's testimony must be excluded under Rule 193.6. A failure to disclose the expert's opinions and to provide a brief summary of the basis of the opinions triggers the automatic exclusion sanctions of Rule 193.6, absent a showing of good cause for such failure or lack of surprise or prejudice.[2]

However, imposing sanctions on a party without notice and an opportunity to be heard violates the requirements of due process. *Braden v. S. Main Bank*, 837 S.W.2d 733, 738 (Tex. App.—Houston [14th Dist.] 1992, writ denied). "The imposition of sanctions requires that 'notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections.'" *Greene v. Young*, 174 S.W.3d 291, 298 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). The motion for

---

[2] *VingCard A.S. v. Merrimac Hosp. Sys., Inc.*, 59 S.W.3d 847, 856 (Tex. App.—Fort Worth 2001, pet. denied). *See also In re Commitment of Marks*, 230 S.W.3d 241, 246 (Tex. App.—Beaumont 2007, no pet.) (trial court properly excluded testimony of expert because responses to request for disclosure did not disclose the expert's opinion); *Izaguire v. Cox*, No. 10-07-00318-CV, 2008 WL 4427272, at *5 (Tex. App.—Waco Oct. 1, 2008, no pet.) (mem. op.) (the testimony of an expert was subject to automatic exclusion under Rule 193.6 because the response to the request for disclosure merely identified the subject matter to which the expert would testify; it did not disclose the expert's opinions or mental impressions); *In Interest of D.W.*, No. 02-13-00293-CV, 2015 WL 1262820, at *1–3 (Tex. App.—Fort Worth Mar. 19, 2015, no pet.) (mem. op.) (same).

17

sanctions must provide notice of the conduct that the movant seeks to sanction so that the respondent may attempt to prepare a defense. *See id.* at 299–300 (holding that the family court improperly sanctioned appellants for their statements made at the bankruptcy court hearings because appellants had no notice that such conduct was under consideration for sanctions). *See also Mann v. Kendall Home Builders Constr. Partners I, Ltd.*, 464 S.W.3d 84, 93 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (holding that a trial court may not award Rule 13 sanctions on a basis not asserted in the motion).

Plaintiffs' motion to exclude the testimony of Dr. James makes no mention of the failure of Defendants' First Amended Responses to Requests for Disclosure to disclose the general substance of Dr. James's opinions and a brief summary of the basis for his opinions, as required by Rule 194.2(f)(3). Because Plaintiffs did not provide notice of this ground for sanctions, Defendants were denied the opportunity to attempt to show (1) good cause for the failure to timely supplement, or (2) that the failure to timely supplement will not unfairly surprise or unfairly prejudice Plaintiffs. *See* Tex. R. Civ. P. 193.6(a). Accordingly, we may not affirm the trial court's exclusion of all of Dr. James's testimony on this ground.

## The Loss of the Bus Camera Does Not Justify the Trial Court's Exclusion of Dr. James's Testimony.

Plaintiffs' counsel explained to the trial court at a hearing on an earlier motion to compel that the video camera on the bus had been removed and misplaced, and that First Transit's corporate representative had testified that he downloaded the missing bus's camera and nothing was there. At the January 14,

18

2016 hearing on the motion to exclude, Plaintiffs' counsel reminded the trial court about Defendants' failure to produce the missing camera. The trial court expressed concern about the missing bus camera and suggested that it could be spoliation. The trial court, however, made no actual finding of spoliation, but, in fact, stated "I am not saying that it's spoliation."[3]

Additionally, a direct relationship must exist between the offensive conduct and the sanction imposed. *TransAmerican,* 811 S.W.2d at 917.

We cannot affirm the trial court's exclusion of Dr. James's testimony based on the loss of the bus camera because (1) the trial court made no spoliation finding, and (2) there is no direct relationship between the loss of the camera and the sanction of excluding all of Dr. James's testimony.

## Defendants Lack an Adequate Remedy by Appeal.

Appeal from a trial court's discovery order is not adequate if the party's ability to present a viable claim or defense is vitiated or severely compromised. *In re Ford Motor Co*., 988 S.W.2d 714, 721 (Tex. 1998) (orig. proceeding). For example, in *In re Alere Women's & Children's Health, LLC*, 357 S.W.3d at 814–15, our court held that the relator had no adequate remedy by appeal for the

---

[3] To find that spoliation occurred, a trial court must affirmatively determine that the nonproducing party breached its duty to reasonably preserve material and relevant evidence. *See Petroleum Sols., Inc. v. Head*, 454 S.W.3d 482, 488 (Tex. 2014). Additionally, before a trial court may submit a spoliation instruction or impose a death-penalty sanction for spoliation, the trial court must find that (1) the spoliating party acted with intent to conceal discoverable evidence, or (2) the spoliating party acted negligently and caused the nonspoliating party to be irreparably deprived of any meaningful ability to present a claim or defense. *Id*. at 489.

striking of its experts on causation and negligence. *Id*. (citing *In re Kings Ridge Homeowners Ass'n, Inc*., 303 S.W.3d 773, 785–86 (Tex. App.—Fort Worth 2009) (orig. proceeding) (holding that when a trial court deprives a party of expert testimony essential to the presentation of its case, trial is "rendered no more than an empty exercise," and there is no adequate remedy by appeal)).

Similarly, in *Tinsley v. Downey*, 822 S.W.2d 784, 786–87 (Tex. App.—Houston [14th Dist.] 1992, no writ), our court held the trial court abused its discretion in excluding the testimony of the defendant's four accident reconstruction experts because the punishment was more severe than necessary to accomplish the legitimate purpose of the court. Our court further held that there was no adequate remedy by appeal because: "Asking a panel of three judges to determine what a jury of twelve would have done had they heard the testimony of expert witnesses is too great a burden to place upon the appellate courts and is simply not an adequate remedy. Although appellate courts should not step in every time sanctions are imposed for abuse of discovery, if the sanction would 'preclude a decision on the merits of a party's claim . . . [the] party's remedy by eventual appeal is inadequate.'" *Id*. Also, in *Loffland Bros. Co. v. Downey*, 822 S.W.2d 249, 252 (Tex. App.—Houston [1st Dist.] 1991, orig. proceeding), the First Court of Appeals held that the relators had no adequate remedy by appeal for the trial court's exclusion of the relators' experts because these experts were to testify at trial on key issues of marine safety and damages, and the relators' defense at trial would be emasculated without the experts' testimony. *Id*.

20

Plaintiffs argue that Defendants have an adequate remedy by appeal because excluding Dr. James from testifying allegedly will not severely compromise their ability to present a viable defense. Plaintiffs note that Defendants still may elicit testimony from all of the fact witnesses, including the seven police officers who investigated the accident that Defendants designated as non-retained experts. Plaintiffs also argue that Defendants do not need Dr. James's testimony for rebuttal purposes because Plaintiffs have not designated an accident-reconstruction expert.

We disagree. The accident involved five vehicles and seven different collisions. Dr. James is an accident reconstructionist and is Defendants' only retained expert witness on the issues of negligence and causation. In our view, Plaintiffs' ability to call police officers who investigated the accident as non-retained experts is a poor substitute for a retained accident reconstructionist who has investigated all aspects of the accident. Because of the complexity of the accident, we conclude that the order prohibiting Dr. James from offering any testimony will severely compromise Defendants' ability to present their defense, and that Defendants therefore have no adequate remedy by appeal.

## Conclusion

We conclude that the trial court clearly abused its discretion because the record does not show that the trial court considered whether imposing the lesser sanction (of excluding just the SMAC Documents, testimony regarding their content, and testimony and opinions based on Dr. James's use of the SMAC program) would have achieved Defendants' compliance with the November 2

21

Order. Nor does the record contain any explanation by the trial court as to why the severe sanction of excluding *all* of Dr. James's testimony was appropriate.

We therefore conditionally grant Defendants' petition for writ of mandamus. We direct the trial court to: (1) vacate its January 14, 2016 sanctions order that prohibits Dr. Mike James from testifying at trial, and (2) consider whether imposing a lesser sanction would achieve Defendants' compliance with the November 2 Order.

We are confident that the respondent will act in accordance with this opinion. The writ will issue only if she fails to do so.


/s/     John Donovan
        Justice


Panel consists of Chief Justice Frost and Justices Donovan and Brown (Frost, C.J., Dissenting.).