COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| PHILIP J. LEONARD, M.D., | § | No. 08-20-00231-CV |
| Appellant, | § | Appeal from the |
| v. | § | 98th Judicial District Court |
| TEXAS MEDICAL BOARD, | § | of Travis County, Texas |
| Appellee. | § | (TC# D-1-GN-18-004874) |

## **O P I N I O N**

Philip J. Leonard, M.D. appeals the district court's judgment affirming the Texas Medical Board's (the Board's) final order revoking his medical license for violations of the Texas Medical Practice Act and the Board's rules.[1] We affirm.

### *Factual and Procedural Background*

Dr. Leonard is a physician who has been licensed to practice medicine in Texas since 1977. He has operated a private neurology clinic in Austin, Texas since 1982 and has been board certified in neurology since 1984. At the time this administrative case began, 80 to 90 percent of Dr. Leonard's practice consisted of Medicaid or Medicare patients, and approximately 10 to 20 percent

---

[1] This case was transferred from our sister court in Travis County, Texas pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX. GOV'T CODE ANN. section 73.001. We follow the precedent of the Austin Court of Appeals to the extent they might conflict with our own. *See* TEX.R.APP.P. 41.3.

of his practice consisted of chronic pain patients. Dr. Leonard has a history of two prior disciplinary orders from the Board, including a December 2004 Agreed Order, which restricted Dr. Leonard's license for ten years and prohibited him from any contact with female patients.

The events leading to this appeal arise from Dr. Leonard's treatment of one patient ("the Patient") at his neurology clinic during the period of May 12, 2011 to May 26, 2015, for chronic pain. Following its investigation, the Board filed a complaint with the State Office of Administrative Hearings (SOAH) seeking disciplinary action against Dr. Leonard, claiming he committed several violations of the Texas Medical Practice Act and the Board's rules. Specifically, the Board alleged Dr. Leonard violated sexual boundaries with the Patient during multiple visits;[2] non-therapeutically prescribed medications, including controlled substances, to the Patient despite knowing the Patient was dependent on opiates;[3] failed to comply with the Board's guidelines for treatment of chronic pain;[4] and failed to maintain an adequate medical record of the Patient's care.[5]

Following a contested case hearing, the Administrative Law Judge (ALJ) issued a Proposal for Decision (PFD) that contained findings of fact and conclusions of law. The ALJ concluded Dr. Leonard violated the Texas Medical Practice Act and Board rules related to standard of care for the treatment of chronic pain,[6] non-therapeutic prescribing,[7] medical recordkeeping,[8] and

---

[2] *See* TEX.OCC.CODE ANN. §§ 164.051(a)(1) and 164.052(a)(5); 22 TEX.ADMIN.CODE ANN. §§ 190.8(2)(E)–(G),(K), and (P)(2011)(Tex. Med. Bd., Violation Guidelines).

[3] *See* TEX.OCC.CODE ANN. §§ 164.051(a)(1), (6) and 164.053(a)(3),(5), (6); 22 TEX.ADMIN.CODE ANN. §§ 190.8(2)(E)–(G),(K), and (P)(2011)(Tex. Med. Bd., Violation Guidelines).

[4] *See* TEX.OCC.CODE ANN. § 164.051(a)(3); 22 TEX.ADMIN.CODE ANN. § 170.3 (2007)(Tex. Med. Bd., Guidelines).

[5] *See* TEX.OCC.CODE ANN. § 164.051(a)(3); 22 TEX.ADMIN.CODE ANN. § 165.1 (2010)(Tex. Med. Bd., Medical Records).

[6] *Id.* §§ 190.8(1)(A)–(D)(2011)(Tex. Med. Bd., Violation Guidelines).

[7] TEX.OCC.CODE ANN. §§ 164.053(a)(5)–(6).

[8] 22 TEX.ADMIN.CODE ANN. § 165.1 (2010)(Tex. Med. Bd., Medical Records); *id.* § 170.3 (2007)(Tex. Med. Bd., Guidelines).

inappropriate boundaries with a patient.[9] The ALJ also found the Board established five aggravating factors[10] and Dr. Leonard established on mitigating factor.[11]

Dr. Leonard filed exceptions to the PFD, and the Board responded. On June 15, 2018, the Board issued a final order adopting the ALJ's findings and conclusions and immediately revoking Dr. Leonard's Texas medical license. Dr. Leonard filed a motion for rehearing, which the Board denied. On July 16, 2019, Dr. Leonard filed a petition for judicial review in Travis County district court. Following a hearing, the district court affirmed the Board's final order. This appeal followed.

### *Standard of Review*

We review an agency's final order under the substantial-evidence rule. *Lowry v. Tex. Med. Bd.*, No. 03-19-00770-CV, 2021 WL 2386005, at *2 (Tex.App.—Austin June 11, 2021, no pet.)(mem.op.), *see Aleman v. Tex. Med. Bd.*, 573 S.W.3d 796, 801 (Tex. 2019)(applying substantial-evidence review to Medical Practice Act case). Under this standard, we presume the Board's final order is supported by substantial evidence. *Haberman v. Tex. Med. Bd.*, No. 07-17-00135-CV, 2018 WL 4610446, at *1 (Tex.App.—Amarillo Sept. 25, 2018, no pet.)(mem.op)(citing *CPS Energy v. Pub. Util. Comm'n of Tex.*, 537 S.W.3d 157, 169 (Tex.App.—Austin 2017), *rev'd in part sub nom. Time Warner Cable Tex. LLC v. CPS Energy*, 593 S.W.3d 291 (Tex. 2019). We may reverse or remand if the appellant's substantial rights have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(A) in violation of a constitutional or statutory provision;
(B) in excess of the agency's statutory authority;

---

[9] TEX.OCC.CODE ANN. §§ 164.051(a)(1) and 164.052(a)(5); 22 TEX.ADMIN.CODE ANN. §§ 190.8(2)(E)–(F)(2011)(Tex. Med. Bd., Violation Guidelines).

[10] *Id.* §§ 190.15(a)(1), (2), (8), (9), (11).

[11] *Id.* § 190.15(b)(5).

(C) made through unlawful procedure;

(D) affected by other error of law;

(E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

TEX.GOV'T CODE ANN. § 2001.174.

This is "essentially a rational-basis test" in which we determine whether the agency's order finds reasonable support in the record as a matter of law. *Tex. Dep't of Family & Protective Services v. C.A.*, No. 03-18-00034-CV, 2018 WL 4473011, at *3 (Tex.App.—Austin Sept. 19, 2018, pet. denied)(mem. op.)[Citation omitted]. "The party challenging the order has the burden of demonstrating a lack of substantial evidence." *Swate v. Tex. Med. Bd.*, No. 03-15-00815-CV, 2017 WL 3902621, at *7 (Tex.App.—Austin Aug. 31, 2017, pet. denied)(mem.op.)(citing *CenterPoint Energy Entex v. R.R. Comm'n of Tex.*, 213 S.W.3d 364, 369 (Tex.App.—Austin 2006, no pet.)). Because our focus is on the agency's decision, we give no deference to the trial court's judgment. *C.A.*, 2018 WL 4473011, at *3 (citing *Tex. Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006)(per curiam)). A reviewing court cannot substitute its judgment for that of the agency by considering the weight of the evidence on questions related to the agency's decision. TEX.GOV'T CODE ANN. § 2001.174. In short, we may reverse the Board's findings and conclusions only if there is no reasonable basis in the evidence for them. *Lowry*, 2021 WL 2386005, at *10 [Citation omitted].

### *Analysis*

In several issues on appeal, Dr. Leonard contends the district court erred in affirming the Board's final order because: (1) the Board erred in applying its new pain treatment rules retroactively; (2) the Board failed to provide sufficient notice to support jurisdiction over the disciplinary proceeding; (3) the Board's final order is not based on requisite expert testimony; (4)

4

the Board's final order is not supported by substantial evidence as to its findings on pain treatment records and boundary violations; and (5) the Board's final order is clouded by an "intolerable risk of bias."

**A. Dr. Leonard waived argument concerning the Board's purported retroactive application of Section 170.3.**

Dr. Leonard argues the Board erred by applying the 2015 version of its pain management rules, rather than the version in place during the time of treatment at issue. *Compare* 22 TEX.ADMIN.CODE ANN § 170.3 (2007)(Tex. Med. Bd., Guidelines) *with id.* (2015)(Tex. Med. Bd., Minimum Requirements for the Treatment of Chronic Pain); *see also* 40 Tex. Reg. 4898, 4899 (describing 2015 amendments to § 170.3). He contends the Board based the revocation of his license on an impermissible retroactive application of the 2015 amendment, which he characterizes as creating a more stringent standard than the 2007 version. The Board vigorously disputes the merits of Dr. Leonard's contention but first argues he waived the argument by failing to include it in his motion for rehearing, SOAH closing brief, or at the contested case hearing. We agree.

"To preserve error, an appealing party must first raise the issue in its motion for rehearing before the agency." *Upper Trinity Reg'l Water Dist. v. Nat'l Wildlife Fed'n*, 514 S.W.3d 855, 870 (Tex.App.—Houston [1st Dist.] 2017, no pet.)(citing *Hill v. Bd. of Trs. of the Ret. Sys. of Tex.*, 40 S.W.3d 676, 679 (Tex.App.—Austin 2001, no pet.)); *see also Johnson v. Tex. Med. Bd.*, No. 03-08-00006-CV, 2010 WL 392303, at *1 (Tex.App.—Austin Feb. 5, 2010, no pet.)(mem.op.)(appellant's alleged failure to raise arguments in motion for rehearing implicates whether motion for rehearing was sufficiently specific to preserve errors complained of in district court and on appeal). The motion's purpose is to inform the agency of the alleged error and allow the agency the opportunity to correct the error, if any, or prepare to defend against it. *Upper Trinity*

*Reg'l Water Dist.*, 514 S.W.3d at 870 (citing *Suburban Util. Corp. v. Pub. Util. Comm'n of Tex.*, 652 S.W.2d 358, 365 (Tex. 1983)). The motion for rehearing must state: (1) the specific finding of fact, conclusion of law, ruling, or other agency action which the complaining party asserts was error; and (2) the legal basis upon which the error claim rests. *Id.* (citing *Burke v. Central Educ. Agency*, 725 S.W.2d 393, 397 (Tex.App.—Austin 1987, writ ref'd n.r.e.)); *see also Tex. Ass'n of Long Distance Tel. Companies (TEXALTEL) v. Pub. Util. Comm'n of Tex.*, 798 S.W.2d 875, 881–82 (Tex.App.—Austin 1990, writ denied)(finding appellant's motion for rehearing argument about retroactive rate setting "sufficiently definite" to apprise agency of claimed error based on constitutional retroactivity premises).

In his motion for rehearing, Dr. Leonard did not raise the issue of whether the Board erred in applying the 2015 version of Section 170.3 instead of the 2007 version in place when he treated the Patient—in other words, he failed to indicate the legal basis upon which his error claim rested. Indeed, Dr. Leonard did not raise any claimed error related to retroactivity until he filed his petition for review with the district court. While Dr. Leonard challenged specific conclusions of law and the findings of fact on which they are based in his motion for rehearing,[12] he did so on discrete factual bases unrelated to the retroactivity challenge he raises now. For example, Dr. Leonard challenged conclusion of law 16[13] on the basis that "the Patient was benefitting from [Dr. Leonard's] treatment" and "the Patient's own notations in the record indicate the medication was assisting him," it was not until after filing the complaint "that the Patient indicated he was not

---

[12] Specifically, Dr. Leonard challenged findings of fact 15, 42, 44–45, 49, 50–51, and 53 and conclusions of law 13–16, 19–20, 24–25, 28, and 30.

[13] "By failing to refer the patient for necessary consultations with other providers, Respondent failed to treat a patient according to the standard of care, was negligent in performing medical services, and failed to use proper diligence in his medical practice."

helped by [Dr. Leonard's] medical treatment," and Dr. Leonard did refer the Patient to other providers.

Dr. Leonard's complaint, without more, in his motion for rehearing that the challenged findings of fact and conclusions of law were "not reasonably supported by substantial evidence," "arbitrary, and/or capricious, and/or . . . characterized by abuse of discretion by the [Board] and/or . . . a clearly unwarranted exercise of discretion by the" Board merely restates the statutory grounds upon which an agency decision may be reversed. That is insufficient to apprise the Board of the error claimed and the legal basis upon which it rests, and allow the Board the opportunity to correct the error, if any, or prepare to defend against it. *See Upper Trinity Reg'l Water Dist.*, 514 S.W.3d at 870 (citing *Suburban Util. Corp.*, 652 S.W.2d at 365); *see also Burke*, 725 S.W.2d at 398 (finding claims in motion for rehearing insufficient to apprise agency of error claimed when, among other things, party failed to indicate the legal basis upon which error claim rested). Accordingly, Dr. Leonard failed to preserve error on the issue.[14]

This conclusion necessarily implicates Issues Two and Three. As to Issue Two—whether the Board satisfied statutory jurisdictional prerequisites—Dr. Leonard contends the Board failed to give notice that it would retroactively apply the amended version of Section 170.3 to his disciplinary proceeding. To the extent Dr. Leonard's jurisdictional issue relates to his complaint regarding the Board's purported retroactive application of Section 170.3, he has not preserved that argument for the reasons described above. And although Dr. Leonard contends Section 154.053 notice "necessarily includes notice of the alleged standard of care," he cites no law to support that assertion. Section 164.004 outlines due process requirements for Board decisions involving license

---

[14] Accordingly, we need not address the brief of amicus curiae Texas Medical Association, which is exclusively based on the merits of the retroactive-application issue.

revocations and provides the Board must, before proceedings are instituted, give notice consistent with the requirements of Section 154.053 to the affected license holder of the facts or conduct alleged to warrant the intended action. TEX.OCC.CODE ANN. § 164.004. The plain language of Section 154.053 requires that the Board "notify the physician of the nature of the complaint." *Id.* § 154.053. Here, the administrative record reflects the Board filed a sworn complaint with SOAH against Dr. Leonard based on alleged violations of the Texas Medical Practice Act. The complaint detailed specific factual allegations and corresponding statutory violations sufficient to notify Dr. Leonard of "the nature of the complaint." Thus, the Board's complaint satisfied the statutory jurisdictional requirements.[15]

As to Issue Three—whether the Board's final order is based on requisite expert testimony—the crux of Dr. Leonard's complaint on this point is the Board's expert witness, Dr. Selma Wilson, testified to the 2015, rather than 2007, version of Section 170.3, which he contends negates her expert testimony. In other words, Dr. Leonard argues the Board's final order is not based on substantial evidence because it lacks expert testimony since an expert opinion applying an inapplicable standard of care is akin to no expert testimony at all. However, for the reasons described above, Dr. Leonard has not preserved the retroactivity argument on appeal. The ALJ otherwise found Dr. Wilson to be a "qualified expert[]." Dr. Wilson has practiced pain management for twenty seven years, and her expert report set forth the general standard of care for treating chronic pain during the period Dr. Leonard treated the Patient, as well as her opinions concerning Dr. Leonard's treatment of the Patient based on a review of his records. "An ALJ, like

---

[15] Dr. Leonard also contends Section 154.053 notice must include an expert physician panel report under Section 154.058, which serves as a determination of medical competency in standard-of-care complaints. Here too there is no indication from the plain language of Section 154.053 that including a Section 154.058 expert panel report is a jurisdictional prerequisite to inform the physician of "the nature of the complaint." *See* TEX. OCC. CODE ANN. § 153.053.

a trial court, has broad discretion when deciding whether to admit expert testimony in a contested-case hearing." *Cotropia v. Tex. Med. Bd.*, No. 03-18-00232-CV, 2018 WL 4087408, at *4 (Tex.App.—Austin Aug. 28, 2018, pet. denied)(mem.op.)(quoting *Scally v. Tex. State Bd. of Med. Exam'rs*, 351 S.W.3d 434, 450 (Tex.App.—Austin 2011, pet. denied); *see also Swate*, 2017 WL 3902621, at *3 [Citation omitted] ("If expert opinion testimony will help the factfinder understand the evidence or determine a fact at issue, it should be admitted."). Given Dr. Wilson's qualifications and relevant testimony, the ALJ did not abuse her discretion in admitting Dr. Wilson's report, and the Board's final order is properly substantiated by expert testimony on standard of care in chronic pain management.

Issues One, Two, and Three are overruled.

## B. The Board's final order is supported by substantial evidence.

### a. Pain treatment records

The Board concluded Dr. Leonard's records did not meet the Board's standards for medical recordkeeping. *See* 22 TEX.ADMIN.CODE ANN. § 165.1 (2010)(Tex. Med. Bd., Medical Records)(requiring licensed physicians to "maintain an adequate medical record for each patient that is complete, contemporaneous and legible" and describing the requirements for an "adequate medical record[,]" which includes, among other things, the patient's progress, non-compliance, and relevant risk factors). But Dr. Leonard contends the Board's final order is not supported by substantial evidence as to its findings and conclusions regarding pain treatment recordkeeping. Specifically, Dr. Leonard argues he kept a documented written treatment plan for the Patient which satisfied the Board's medical recordkeeping rules. He also claims his records demonstrate monitoring the Patient's compliance with medication intake.

9

However, the administrative record contains several examples of Dr. Leonard's medical records falling short of what the Board's rules require. For example, Dr. Leonard's records reflect a failure to adequately document aspects of performed procedures, including the amount of medicine used in trigger injections, and failure to document medical rationale for a change in pain management medications. At the hearing, Dr. Leonard acknowledged he performed a genital exam on the Patient but omitted it from the Patient's medical records. Additionally, Dr. Leonard's expert witness, Dr. Craig DuBois, characterized Dr. Leonard's records as "not good" recordkeeping on several occasions, including failures to document trigger point injections, drug screening for compliance, and a genital exam.

The ALJ's analysis in the PFD demonstrates a careful and thorough review and weighing of the evidence related to Dr. Leonard's recordkeeping. Indeed, the PFD contains several examples of the ALJ finding Dr. Leonard's medical records sufficient, despite the Board's allegations to the contrary. For example, the ALJ found Dr. Leonard's notes regarding an increase in certain pain medication dosage sufficient to meet the Board's rules. The ALJ also determined Dr. Leonard's medical records were legible, despite the Board's argument to the contrary, and declined to find a violation of Board rules 165.1 and 170.3 for small inconsistencies and errors in documentation, which she characterized as "minor violations."

But the ALJ agreed with the Board that the evidence reflected other failures by Dr. Leonard to maintain adequate medical records. Specifically, the ALJ found Dr. Leonard failed to document a genital examination, did not adequately document when he performed trigger point injections, and failed to clearly document his medical rationale for discontinuing two pain medications, then returning to those medications two weeks later. These recordkeeping failures constituted violations of the Board's rules and, as the ALJ described, made it difficult to discern when or whether Dr.

Leonard monitored the patient's medication intake through reported drug screens, treatments, or evaluations. In short, Dr. Leonard has not met the burden substantial evidence review requires because the record demonstrates a reasonable basis for the Board's conclusion that his medical recordkeeping violated Board rules.

Finally, Dr. Leonard protests the way in which his records were presented at the contested hearing. He says while he normally kept his records in a "specific organized, chronological and topical pattern associated with each visit," the records were in a "non-useful, non-useable manner" at the hearing, and the ALJ did not permit him to refer to his records in their original format. To the extent Dr. Leonard raises an evidentiary challenge contesting the ALJ's decision to exclude his original medical records, we review the decision for abuse of discretion, meaning we will uphold the evidentiary ruling if there is any legitimate basis to support it. *Rodriguez-Aguero v. Tex. Med. Bd.*, No. 03-09-00262-CV, 2010 WL 1730023, at *3 (Tex.App.—Austin Apr. 30, 2010, no pet.)(mem.op.). The hearing transcript reflects neither the Board staff nor the ALJ received notice that Dr. Leonard wanted to use his original records during his hearing testimony prior to his attorney calling him as a witness at the contested hearing. The Board staff then objected to Dr. Leonard using his original records because he had designated himself as a testifying expert but had not produced these records to the Board before the hearing. The hearing transcript also shows that while the ALJ directed Dr. Leonard to refer to the official copy of the records that had been produced to the Board and were admitted into evidence, she did not foreclose him from referring to his records if he found the admitted records insufficient, so long as the Board then had the opportunity to object.

"'A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed' unless

the trial court finds either good cause or the absence of unfair surprise or unfair prejudice." *Barton Food Mart, Inc. v. Botrie*, No. 03-17-00292-CV, 2018 WL 5289538, at *6 (Tex.App.—Austin Oct. 25, 2018, pet. denied)(mem.op.)(quoting TEX.R.CIV.P. 193.6(a)). The burden to establish an exception is on the proponent of the evidence. TEX. R. CIV. P. 193.6(b). Here, Dr. Leonard made no effort to establish an exception, so the exclusion is automatic. *See Barton Food Mart*, 2018 WL 5289538, at *6 (citing *In re First Transit Inc.*, 499 S.W.3d 584, 595 (Tex.App.—Houston [14th Dist.] 2016, orig. proceeding [mand. denied]))(mem.op.). Accordingly, the ALJ did not abuse her discretion by excluding Dr. Leonard's original records from the hearing.

### b. Boundary violations

Dr. Leonard also argues the Board's final order is not supported by substantial evidence as to its findings regarding inappropriate boundary violations. He claims the Patient's testimony is inconsistent and lacks specificity, credibility, or corroboration, specifically pointing to the Patient's memory problems, which were acknowledged at the hearing. Dr. Leonard also rebuts the Patient's allegations related to inappropriate touching, contending he could not have plausibly touched the Patient as alleged because of his physical size and the layout of the exam room and would not have done so because he "is heterosexual." He also points to the fact that the Patient allegedly thanked Dr. Leonard for his treatment, wrote his complaint to the Board after Dr. Leonard admonished the Patient regarding overuse of medications, and called Dr. Leonard to say he was "being pressured" to testify against him.

However, the administrative record contains evidence, including substantial testimony from the Patient, that Dr. Leonard made sexually explicit comments to the Patient and inappropriately touched the Patient on multiple occasions. At the SOAH hearing, the Board staff countered Dr. Leonard's objection that it would have been physically implausible for him to touch

the Patient as described by providing a demonstration with the Patient of how this occurred. The Patient also testified at the hearing that Dr. Leonard's conduct caused him significant physical and emotional pain.

Here too the ALJ's reasoning in the PFD demonstrates a careful and thorough weighing of the evidence and the credibility of witnesses, which resulted in findings for both the Board and Dr. Leonard on different allegations. For example, the ALJ determined there was a preponderance of credible evidence to support a finding that Dr. Leonard violated Code Sections 164.051(a)(1) and .052(a)(5), plus Board rules 190.8(2)(E) and (F), because the ALJ found the Patient credibly testified Dr. Leonard inappropriately touched him during office visits. The ALJ acknowledged the Patient suffered from "some memory problems" and noted his drug-seeking behavior "weigh[ed] against his credibility," but found he "testified credibly at [the] hearing," "testified fairly consistently in all . . . forums," and "was not seriously challenged on relevant inconsistencies in his testimony." ALJ also found that following the inappropriate touching, the Patient made a contemporaneous outcry to a friend and counselor, then filed a police report and complaint with the Board. However, the ALJ also determined there was not a preponderance of credible evidence to conclude Dr. Leonard told the Patient he knew the Patient would not report the conduct because the Patient needed pain medication, such that Dr. Leonard did not violate Board rules 190.8(2)(G), (K), and (P), as the Board had alleged.

We conclude the evidence supplied a reasonable basis for the Board's findings and conclusions that Dr. Leonard violated Board rules related to inappropriate boundary violations. While the Patient's claims of inappropriate touching effectively amount to a "he said-he said"— as no other individual witnessed any alleged inappropriate touching—the ALJ is the fact finder in the Board's contested hearings, and it is her job to "determine[] the credibility of the witnesses and

13

the weight to give their testimony[.]" *C.A.*, 2018 WL 4473011, at *3 [Citation omitted]. We cannot substitute our judgment for that of the agency by reweighing the evidence on questions related to the Board's decision. *See* TEX.GOV'TCODE ANN. § 2001.174. Because the record contains reasonable support for the Board's decision related to inappropriate boundary violations, our inquiry must end there.

Issue Four is overruled.

## C. There is no indication of impermissible bias.

Finally, Dr. Leonard contends the Board's final order is clouded by the "intolerable risk of bias" or "appearance of impropriety" which he contends prevented him from receiving a fair disciplinary hearing. Specifically, Dr. Leonard argues the Board's "highly publicized" purported "attack" on another ALJ for declining to find the Board's witness credible in an unrelated SOAH proceeding, which resulted in the ALJ's resignation, prevented him from having a fair hearing in his own case. Dr. Leonard also contends the Board's references to him as a "repeat offender" was an improper attempt to influence the ALJ and cast him as not credible.

We presume decisionmakers in a contested-case hearing are "fair, honest, and unbiased." *Hammack v. Pub. Util. Comm'n of Tex.*, 131 S.W.3d 713, 731 (Tex.App.—Austin 2004, pet. denied)[Citation omitted]. To overcome that presumption, Dr. Leonard must show the ALJ's mind was "irrevocably closed" to the matter before her as to render her incapable of impartially judging the evidence and testimony presented at his hearing. *Geeslin v. State Farm Lloyds*, 255 S.W.3d 786, 803 (Tex.App.—Austin 2008, no pet.)(citing *Hammack*, 131 S.W.3d at 731). An administrative decisionmaker "exhibits impermissible bias when '[t]he bias . . . come[s] from an extrajudicial source and result[s] in an opinion on the merits of the case other than what the judge learned from participating in the case.'" *Office of Pub. Util. Counsel v. Pub. Util. Comm'n*, 185

14

S.W.3d 555, 574 (Tex.App.—Austin 2006, pet. denied)(quoting *Rosas v. State*, 76 S.W.3d 771, 774 (Tex.App.—Houston [1st Dist.] 2002, no pet.)).

Dr. Leonard's allegations alone are insufficient. He has presented no evidence to show the ALJ "did not properly listen to, consider, and weigh the evidence presented before making [her] final decision." *See Geeslin*, 255 S.W.3d at 803 (finding the same of appellant in administrative appeal of insurance case). Mere speculation, without more, that a distinct "highly publicized" administrative proceeding involving the Board risked biasing the ALJ in Dr. Leonard's case is insufficient to overcome the presumption of fairness. Similarly, Dr. Leonard offers no evidence in support of his contention that the Board's description of him as a "repeat offender" rendered the ALJ incapable of impartially judging the evidence regarding his credibility.[16]

In any event, the purpose of a PFD is to "recommend a result and contain 'a statement of the reasons for the proposed decision and of each finding of fact and conclusion of law necessary to the proposed decision.'" *Graff Chevrolet Co. v. Tex. Motor Vehicle Bd.*, 60 S.W.3d 154, 159 (Tex.App.—Austin 2001, pet. denied)(quoting TEX.GOV'TCODE ANN. § 2001.062(c)). It "is not supposed to be a neutral, detailed reflection of the record, but a summary of the presented evidence and the ALJ's recommendation regarding the just result of the dispute." *Id.* Here, the PFD reflects the ALJ's determination of the evidence in accordance with the statutory requirements. *See* TEX.GOV'TCODE ANN. § 2001.062(c). The ALJ independently found Dr. Leonard violated the Board rules and Texas Medical Practice Act provisions, and as detailed above, Dr. Leonard failed

---

[16] While Dr. Leonard also argues the Board's use of the phrase "repeat offender" and references to "prior bad acts" violates his expunction order, the administrative record reflects the Board's references in fact related to Dr. Leonard's prior disciplinary proceedings with the Board, not his criminal proceedings. Previous disciplinary action by the Board is properly considered as an aggravating factor in any disciplinary action. 22 TEX. ADMIN. CODE ANN. §§ 190.15(a)(9). Dr. Leonard does not contest he has two prior disciplinary orders issued by the Board. Accordingly, this argument is unavailing because the expunction order relates to only Dr. Leonard's related criminal records, not the Board's prior disciplinary proceedings.

to establish the Board's final order is not supported by substantial evidence. The ALJ also properly considered statutorily relevant factors, including previous disciplinary action by the Board, in finding aggravating factors warranting a more severe sanction. Dr. Leonard has put forth no evidence suggesting the ALJ's mind was "irrevocably closed" to render her incapable of impartially assessing his credibility in light of the evidence related to inappropriate boundary violations; instead, the administrative record and PFD show the ALJ carefully reviewed and weighed the evidence and testimony presented in making her final decision. Accordingly, Dr. Leonard has not met the burden of showing any impermissible decisionmaker bias.

Issue Five is overruled.

## CONCLUSION

For the foregoing reasons, we affirm the district court's order affirming the Board's final order.


YVONNE T. RODRIGUEZ, Chief Justice

October 26. 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.

16